**STATE of Iowa, Appellant,**

v.

**Dallas Wade MADDOX, Appellee.**

No. 02–0630.

Supreme Court of Iowa.

Oct. 8, 2003.

Thomas J. Miller, Attorney General, Thomas S. Tauber, Assistant Attorney General, Patrick C. Jackson, County Attorney, and Michael Bennett, Assistant County Attorney, for appellant.

Alan N. Waples, Burlington, for appellee.

STREIT, Justice.

Wal–Mart employees and police officers became suspicious when two men went shopping late at night for an aquarium pump, flexible plastic tubing, coffee filters, starter fluid, and some jars. The police obtained a warrant, searched their truck, and discovered methamphetamine precursors, including peeled lithium batteries and crushed ephedrine pills. The district court held the search unconstitutional, and suppressed the seized evidence. The court of appeals affirmed. On appeal, we are asked to determine whether the warrant was supported by probable cause, and, if not, whether a warrantless search of the truck was constitutional. We find the police had probable cause to search the truck without a warrant. We reverse and remand for further proceedings.

## I. Background and Facts

Late one night in December, Dallas Wade Maddox and Anthony George Gallegos went shopping together at the West Burlington Wal–Mart. A store employee, suspicious of items in a shopping cart, called an assistant manager. The assistant manager walked by Maddox and Gallegos, and saw at least a six-pack of starter fluid, flexible plastic tubing, and a plastic or glass jar in one of their carts. The manager recognized the items, in combination, might be used to produce methamphetamine. In accordance with store policy, police were called.

When it came time to check out, Maddox and Gallegos went through the same checkout stand, but with separate orders. After paying, Maddox went to a semi-truck—*sans* trailer—parked in the middle of the parking lot. Maddox then got in the truck. As Gallegos was leaving, the police arrived at the store, and Gallegos made a "U-turn" back towards some payphones outside the store. A police officer briefly questioned the assistant manager, who told him Maddox and Gallegos had made a suspicious purchase of items, including starter fluid, plastic or glass jars, coffee filters, and plastic tubing. Gallegos later walked toward the semi-truck, and police followed him.

Maddox then got out of the semi-truck, and a police officer asked Maddox and Gallegos if he could see what they had in their shopping bags. Maddox went back to the truck and got his bag. Both Maddox and Gallegos then showed the officer what they had bought. In Maddox's bag, the officer found one or two plastic or glass jars and a six-pack of starter fluid;

in Gallegos' bag, police found a plastic or glass jar, an aquarium pump, plastic tubing, and cough drops. The officer thought all of the items, except the cough drops, were consistent with the production of methamphetamine. He then called in the Southeast Iowa Drug Task Force.

Upon arrival, one member of the task force looked into the windows of the semi-truck, and saw more Wal–Mart bags inside its cab. The officer could not determine what was in the bags. Meanwhile, another officer, Investigator Dean Salsberry, asked Maddox why he had purchased each of the items. Maddox gave explanations for each purchase: Maddox said he had purchased a six-pack of starter fluid to keep the semi-truck running in the cold weather; an aquarium pump and tubing for his aquarium; jars for storing foods in his semi; and coffee filters to make coffee.[1]

Based on his training and experience regarding methamphetamine production, Investigator Salsberry believed Maddox and Gallegos had purchased the items—except for the cough drops—for the production of methamphetamine. At the suppression hearing, Salsberry testified how each of these items are commonly used in the manufacture of methamphetamine: starter fluid is used as a solvent, in order to extract chemicals needed for the production of methamphetamine from over-the-counter medication; coffee filters are then used to filter out the "impurities" found in the medication; methamphetamine manufacturers use jars to store and transfer chemicals at various stages of the process; and plastic tubing is used to convert methamphetamine from liquid to pow-

---

1. Although the officer who searched the two bags did not report seeing coffee filters, another officer stated the assistant store manager had told him that coffee filters were purchased. It is also unclear from the record why Maddox gave an explanation for the purchase of the aquarium pump and tubing, when they were found in Gallegos' bag, and the two made separate purchases.

der form—a process which an aquarium pump hastens.

The police asked to search the semi-truck, but Maddox said they would have to ask his supervisor for permission first. When the officers asked Maddox how to contact his supervisor, Maddox said his supervisor was out-of-town and unavailable. Failing to obtain consent to search the semi-truck, the officers applied for and received a search warrant.

At a suppression hearing, Maddox alleged the warrant lacked probable cause. The State replied the warrant was sufficiently supported by probable cause, and, even if the warrant was somehow defective, that the search of the semi-truck falls within the so-called "automobile exception" to the search warrant requirement. The district court sustained Maddox's motion to suppress. The court held the warrant was defective and that the officers lacked probable cause to search the semi-truck, in violation of Maddox's constitutional right against unreasonable searches and seizures. The State appealed on an interlocutory basis, and the court of appeals affirmed the ruling of the district court. The State asked us to review this ruling.

## II. Scope of Review

■ Where the State is alleged to have violated a defendant's constitutional rights against unreasonable searches and seizures, our review is de novo. *State v. Jones,* 666 N.W.2d 142, 145 (Iowa 2003).

## III. The Merits

■ We have repeatedly held that where there is probable cause and exigent circumstances, a warrantless search does not violate a defendant's constitutional rights against unreasonable searches and seizures. *See, e.g., State v. Bergmann,* 633 N.W.2d 328, 338 (Iowa 2001); *see also* U.S. Const. amend. IV; Iowa Const. art. I,

§ 8. A trailerless semi-truck, because of its inherent mobility, presents an exigent circumstance. This is the so-called "automobile exception" to the well-established legal maxim that warrantless searches are per se unreasonable. *See Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *State v. Dawdy,* 533 N.W.2d 551, 556 (1995). Even if police lack a valid warrant, they may search a vehicle if they have probable cause to believe a crime, or evidence thereof, may be found within it. Therefore, we must now determine whether the police had probable cause to search the semi-truck.

■ Probable cause is present when "a person of reasonable prudence would believe a crime was being committed on the premises to be searched or evidence of a crime could be located there." *State v. Bowers,* 661 N.W.2d 536, 542 (Iowa 2003). In considering whether the police had probable cause to search the semi-truck, we "make an independent evaluation of the totality of the circumstances as shown by the entire record." *State v. Crawford,* 659 N.W.2d 537, 541 (Iowa 2003) (citing *State v. Turner,* 630 N.W.2d 601, 606 (Iowa 2001)).

The district court and the court of appeals both held the facts of the present case do not amount to probable cause to search the semi-truck. In reaching its decision, the court of appeals recognized its decision accorded with the ruling in a federal case with "a virtually identical fact pattern." *State v. Maddox,* 665 N.W.2d 439, 2003 WL 1786084 at *2, n. 2 (Iowa Ct.App., April 4, 2003) (citing *United States v. Ameling,* 2002 WL 31972354 (N.D.Iowa, June 26, 2002), *rev'd,* 328 F.3d 443 (8th Cir.2003), *cert. denied,* —— U.S. —— (2003). We agree the facts of the two cases are similar.

In *Ameling*, Target store employees told police officers the defendants had walked together to the area in the store where pseudoephedrine, a known methamphetamine precursor, was sold. Each defendant picked up two boxes of pseudoephedrine products, walked toward the checkout lanes, and split up, checking out separately at different checkout stands. After making their purchases, the defendants met up at a truck in the parking lot. A store security officer, knowing methamphetamine producers often split up their purchases in order to avoid detection, called police. While the security officer was on the phone with police, he watched the defendants drive across the street to a nearby grocery store. A police officer called the grocery store, and was told the defendants had purchased a lithium battery (another known methamphetamine precursor) there. The defendants came out of the store, got into their truck, and left. The police stopped their truck, and questioned the defendants separately. The defendants gave inconsistent statements, denied purchasing either pseudoephedrine or a battery, and refused to consent to a search of their truck. The police then searched the truck.

Although a federal magistrate ruled the search of the truck was unconstitutional, that decision was subsequently reversed. *United States v. Ameling*, 328 F.3d 443 (8th Cir.2003). The United States Court of Appeals held that apparently false and inconsistent statements, when coupled with the purchase of a significant amount of a known methamphetamine precursor, attempted concealment thereof, and the training and experience of the officers in methamphetamine production, established probable cause and rendered the warrantless search of the truck constitutional. *Id.* at 448–49.

The reasoning of the United States Court of Appeals in *Ameling* is consistent with our recent decision in *State v. Heuser*, 661 N.W.2d 157 (Iowa 2003), which also involved the suspicious purchase of methamphetamine precursors. In *Heuser*, a man and a woman entered a Target store together, but separated and bought several boxes of cold medication containing pseudoephedrine at separate cash registers. A store employee became suspicious and called police. The police then observed the defendants alternating the purchasing at two other stores. Upon learning the man had purchased additional boxes of cold medication containing pseudoephedrine at a third store, the police stopped the defendants' van.

Although in *Heuser* we were only asked whether the defendants' conduct met the lesser constitutional mandate for an investigatory stop, we held police had "a solid basis upon which the officers had reasonable cause to stop the van to determine 'whether criminal activity [was] afoot.'" *Heuser*, 661 N.W.2d at 162 (quoting *State v. Richardson*, 501 N.W.2d 495, 497 (1993)); *see also Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889, 911 (1968). Bearing in mind the higher burden of proof required here, we recognize the case under consideration is a closer one. Nevertheless, using the analysis in both *Heuser* and *Ameling* as guideposts, we think the burden of probable cause is met.

In the present case, officers found Maddox and Gallegos in possession of several legal materials that, taken in combination, gave both store employees and trained police officers good reason to believe they would be used to make methamphetamine. The inference is just as strong as if the defendants had bought several boxes of over-the-counter medication containing pseudoephedrine. We have recognized

"police must 'draw upon their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person.'" *Heuser,* 661 N.W.2d at 161 (quoting *United States v. Arvizu,* 534 U.S. 266, 273, 122 S.Ct. 744, 750–51, 151 L.Ed.2d 740, 749–50 (2002)). Investigator Salsberry, a member of the local drug task force, had substantial education, training, and experience in the investigation of the manufacture of methamphetamine, and recognized the particular combination of materials bought by the defendants was consistent with that illegal activity.

Although the suspects in the present case did not make inconsistent or putatively false statements to the police, as in *Ameling,* Maddox's responses were generally inconsistent with the attendant circumstances of the case. Although Maddox gave facially valid explanations for his purchases, the facts of the case undermine their believability. Maddox and Gallegos displayed unusual behavior which strengthened the inference that the purchases were not for various innocent purposes, but rather that criminal activity or evidence would be found in the semi-truck. Store personnel observed the defendants shopping together late at night for a peculiar constellation of items, known by trained police officers to be consistent with methamphetamine production. When the defendants checked out of the store they did so separately, albeit at the same checkout stand. Upon leaving the store, Maddox's co-defendant, Gallegos, made a "U-turn" for the payphones. He later headed towards the truck, as well, to meet up with Maddox.[2] Importantly, the police

saw more Wal–Mart bags in the car, thus raising the inference that Maddox and Gallegos may have made other purchases towards the manufacturing of methamphetamine at other times or at other Wal–Mart stores, which might be found in the truck—thus further 'breaking up' their purchases in order to avoid detection, like the defendants in *Heuser* and *Ameling.*

■ Although Maddox and Gallegos consented to a search of their bags, Maddox refused to allow officers to search the truck. Absent other facts, mere refusal to consent to a search does not establish probable cause. *State v. Green,* 540 N.W.2d 649, 656 (1995). Maddox had previously entered the vehicle to retrieve a bag, but later refused to allow officers to search the truck, even though additional bags were there. Maddox then gave feeble excuses for his refusal to consent to the search. Maddox told police they would need to ask his supervisor for permission. When the police then asked Maddox how they could contact his supervisor, Maddox said his supervisor was out-of-town and unavailable. Under such circumstances, Maddox's refusal to consent to a search of the truck, as well as his subsequent excuses, fairly raise a further inference that criminal activity or evidence was to be found in the semi-truck.

We have previously stated that, when determining whether police officers have probable cause to conduct a search,

[a]ll of the evidence available to the arresting officer may be considered, regardless of whether or not each component would support a finding of probable cause by itself. Seemingly innocent ac-

---

**2.** The district court and the court of appeals incorrectly concluded Gallegos had his own vehicle at the scene. Because of this finding, both courts reasoned that the link between the Gallegos' purchases and the semi-truck was weaker than if Gallegos was a passenger in, or driver of, the semi-truck. At oral argument, however, Maddox's counsel conceded Gallegos did not have his own vehicle.

tivities may combine with other factors to give an experienced police officer reasonable grounds to suspect wrongdoing.

*State v. Bradford,* 620 N.W.2d 503, 508 (Iowa 2000) (citations omitted). This principle guides our decision today. Considering together all the factors previously described, no matter how innocent each may appear alone, we conclude "a person of reasonable prudence would believe a crime was being committed on the premises to be searched or evidence of a crime could be located there." *Bowers,* 661 N.W.2d at 542.

Because police had probable cause to search the truck without a warrant, it does not matter whether the warrant the police in fact obtained was valid. We therefore do not reach the issue of whether the warrant was supported by probable cause. The district court and court of appeals erred in suppressing evidence seized as a result of the search, because the search falls within the so-called "automobile exception" to the legal maxim that warrantless searches are unreasonable.

### IV. Conclusion

Considering the totality of the circumstances, the police, given the information available to them at the time of the search, had probable cause to search the semi-truck. The warrantless search of the semi-truck fits within the so-called "automobile exception" to the legal maxim that warrantless searches are per se unreasonable. We do not address the validity of the warrant; the search would be constitutional even without a valid warrant. The district court and court of appeals thus erred in sustaining the defendant's motion to suppress and excluding evidence gained as a result of the search of the semi-truck. We therefore reverse and remand to the district court for proceedings not inconsistent with this decision.

**REVERSED AND REMANDED.**