# IN THE SUPREME COURT OF IOWA

No. 118 / 06-1507

Filed May 9, 2008

**STATE OF IOWA,**

   Appellant,

vs.

**ALLEN ROBERT ALLENSWORTH,**

   Appellee.

---

Appeal from the Iowa District Court for Polk County, Karen A. Romano, Judge.

The district court suppressed drug evidence discovered during a search of an impounded vehicle. **REVERSED AND REMANDED.**

Thomas J. Miller, Attorney General, Elisabeth S. Reynoldson and Mary E. Tabor, Assistant Attorneys General, John P. Sarcone, County Attorney, and Stephanie Cox, Assistant County Attorney, for appellant.

Mark C. Smith, State Appellate Defender, and Stephan J. Japuntich, Assistant State Appellate Defender, for appellee.

**HECHT, Justice.**

We granted the State's application for discretionary review of the district court's order suppressing methamphetamine seized by law enforcement officers from a motor vehicle. We conclude the warrantless search of the steering column of the vehicle was supported by probable cause, and was therefore permissible under the automobile exception to the Fourth Amendment's warrant requirement. Accordingly, we reverse the district court's order.

## I.      Factual and Procedural Background.

A Polk County sheriff's deputy stopped a vehicle for speeding on Euclid Avenue in Des Moines. As the deputy approached the vehicle, Allen Allensworth rolled down the driver's window, stated his name, and disclosed that there was an outstanding warrant for his arrest. The deputy noticed Allensworth had a large snake draped around his neck. A warrant check confirmed Allensworth had an outstanding warrant for a parole violation. The deputy arrested Allensworth, contacted Allensworth's friend to come to the scene and retrieve the snake, and called a towing company to transport the vehicle from the scene of the arrest. Due to the presence of the snake and the amount of traffic at the intersection where the stop occurred, the deputy decided to defer an inventory of the contents of the vehicle until after it was moved to the location where it was to be impounded.[1]

---

[1]The Polk County Sheriff has a motor vehicle impoundment and inventory policy. With exceptions not relevant here, the policy directs that if the driver of a vehicle is arrested, officers are to impound the vehicle and perform an inventory of its contents. The policy states the inventory is not to be used as a pretext to search for evidence, but is designed to protect the citizen's property and the county. If illegal substances are encountered during the inventory, the policy directs the officer to (1) stop the inventory; (2) contact a supervisor; (3) complete the inventory; and (4) consider obtaining a search warrant authorizing "a more thorough search of the motor vehicle."

After transporting Allensworth to the jail for booking, but before he went to the impound lot to complete an inventory search of the vehicle, the deputy received an anonymous phone call reporting there were drugs in Allensworth's car. Approximately two hours after the vehicle was towed and impounded, the deputy and another officer began an inventory of the vehicle's contents. The deputy located a small bag of marijuana in the center console. Knowing the steering column was "a known place where people hide drugs," an officer removed the horn button on the steering column and discovered a small plastic bag containing approximately twenty-five grams of methamphetamine.

Allensworth was charged with possession with intent to deliver more than five grams of methamphetamine, in violation of Iowa Code section 124.401(1)(*b*)(7) (2005), and failure to possess a drug tax stamp, in violation of Iowa Code section 453B.12. He filed a pro se motion to suppress the marijuana and methamphetamine, claiming they were seized in violation of the Fourth Amendment of the United States Constitution.[2] Following a hearing, the district court concluded the seizure of the vehicle, the inventory search of the console, and the resulting seizure of the marijuana did not violate Allensworth's Fourth Amendment rights. The court suppressed the

---

[2]Allensworth claims on appeal the search also violated his rights under article I, section 8 of the Iowa Constitution, and that if we find the issue was not preserved below, we should address it on ineffective-assistance-of-counsel grounds. Allensworth did not raise below, and the district court did not rule on, a state constitutional claim. Moreover, he does not suggest on appeal that the analytical framework under the state constitution should differ from the Fourth Amendment analysis in this case. *Cf. Racing Ass'n of Cent. Iowa v. Fitzgerald*, 675 N.W.2d 1, 6 (Iowa 2004) (declining to adopt a different equal protection analysis under the analogous provision of the Iowa Constitution where no such analytical framework was urged by either party). Accordingly, Allensworth has failed to demonstrate prejudice resulting from his counsel's failure to raise a state constitutional claim. *See State v. Shanahan*, 712 N.W.2d 121, 136 (Iowa 2006) (stating that in order to obtain relief on an ineffective-assistance-of-counsel claim one must prove "(1) the attorney failed to perform an essential duty and (2) prejudice resulted"). Because the claim of trial counsel's ineffectiveness is without merit, we shall not further discuss it.

methamphetamine, however, on the ground that the search of the steering column exceeded the proper scope of an inventory search.[3]

The State filed a motion requesting the district court reconsider its ruling, advancing the automobile exception to the warrant requirement as an alternative ground for upholding the search of the vehicle and seizure of the methamphetamine. The district court denied the motion, concluding the automobile exception applies only if probable cause for the search and exigent circumstances exist at the scene of the stop. The district court reasoned that the automobile exception did not apply under the circumstances of this case because probable cause for a warrantless search extending beyond an inventory search did not exist at the scene of the stop in this case, but arose only later after the vehicle was impounded when marijuana was discovered in the course of the inventory search. We granted discretionary review of the district court's suppression order.

**II.    Scope of Review.**

We review Fourth Amendment claims de novo. *State v. Lam*, 391 N.W.2d 245, 248 (Iowa 1986).

**III.    Discussion.**

The State confines its argument on appeal to the validity of the search of the steering column under the so-called "automobile exception" to the Fourth Amendment's warrant requirement. The State contends the district

---

[3]An inventory of the contents of an impounded vehicle pursuant to standard police procedures is reasonable if the process is aimed at securing or protecting the vehicle and its contents. *South Dakota v. Opperman*, 428 U.S. 364, 372, 96 S. Ct. 3092, 3098–99, 49 L. Ed. 2d 1000, 1007 (1976). "The policy or practice governing inventory searches should be designed to produce an inventory," and not simply be a ruse for "general rummaging in order to discover incriminating evidence." *Florida v. Wells*, 495 U.S. 1, 4, 110 S. Ct. 1632, 1635, 109 L. Ed. 2d 1, 6 (1990). One factor considered by the court in its assessment of the reasonableness of an inventory search is whether the officer "acted in bad faith or for the sole purpose of investigation." *Colorado v. Bertine*, 479 U.S. 367, 373, 107 S. Ct. 738, 741, 93 L. Ed. 2d 739, 746 (1987).

court erred in holding the automobile exception requires special exigency at the time the probable cause arises. Allensworth asserts the district court correctly suppressed the methamphetamine because the officers who conducted the search of the vehicle exceeded the limits of an inventory search when they invaded the steering column.

The Fourth Amendment of the United States Constitution ensures "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. "Searches and seizures conducted by governmental officials without prior court approval are per se unreasonable unless they fall within one of the few exceptions to the Fourth Amendment's warrant requirement." *State v. Jackson*, 542 N.W.2d 842, 845 (Iowa 1996) (citing *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 514, 19 L. Ed. 2d 576, 585 (1967); *State v. Cook*, 530 N.W.2d 728, 731 (Iowa 1995)). The Supreme Court has recognized a "specifically established and well-delineated" exception to the warrant requirement for searches of automobiles and their contents. *California v. Acevedo*, 500 U.S. 565, 581, 111 S. Ct. 1982, 1991, 114 L. Ed. 2d 619, 634 (1991).

A review of the evolution of the automobile exception is useful in the analysis of the issue presented in this case. The United States Supreme Court first applied the exception in *Carroll v. United States*, 267 U.S. 132, 45 S. Ct. 280, 69 L. Ed. 543 (1925). In *Carroll*, the Court held a search warrant is unnecessary for the search of an automobile when officers have probable cause to believe the vehicle contains contraband. 267 U.S. at 153–56, 45 S. Ct. at 285–86, 69 L. Ed. at 551–53. The Court concluded warrantless searches of vehicles based on probable cause are constitutionally permissible as it would be impracticable to require officers

to secure a warrant "because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant may be sought." *Id.* at 153, 45 S. Ct. at 285, 69 L. Ed. at 551. Thus, the original impetus for allowing warrantless searches of automobiles based upon probable cause was the exigency inherent in dealing with movable vehicles.

Forty-five years after *Carroll* was decided, the Court again addressed the scope of the automobile exception in *Chambers v. Maroney*, 399 U.S. 42, 90 S. Ct. 1975, 26 L. Ed. 2d 419 (1970). In *Chambers*, the police stopped a vehicle matching a description of the vehicle used an hour earlier by armed gunmen who robbed a gas station. 399 U.S. at 44, 90 S. Ct. at 1977, 26 L. Ed. 2d at 424. The officers arrested the passengers on suspicion of armed robbery, and impounded the vehicle at the police station. The officers conducted a search of the vehicle at the police station and found a gun concealed under the dashboard. *Id.*

Rejecting Chambers' claim that the search by the officers at the police station was unreasonable because no exigency existed to justify a warrantless search of the impounded vehicle, the Court noted:

> Arguably, because of the preference for a magistrate's judgment, only the immobilization of the car should be permitted until a search warrant is obtained; arguably, only the "lesser" intrusion is permissible until the magistrate authorizes the "greater." But which is the "greater" and which the "lesser" intrusion is itself a debatable question and the answer may depend on a variety of circumstances. For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. *Given probable cause to search, either course is reasonable under the Fourth Amendment.*
>
> On the facts before us, the [vehicle] could have been searched on the spot when it was stopped since there was probable cause to search and it was a fleeting target for a search. The

> probable-cause factor still obtained at the station house and so did the mobility of the car unless the Fourth Amendment permits a warrantless seizure of the car and the denial of its use to anyone until a warrant is secured. In that event there is little to choose in terms of practical consequences between an immediate search without a warrant and the car's immobilization until a warrant is obtained.

*Id.* at 51–52, 90 S. Ct. at 1981, 26 L. Ed. 2d at 428 (emphasis added). The Court concluded law enforcement officers' encounters with vehicles that are readily capable of movement are sufficiently "exigent" to allow for warrantless searches based on probable cause. *Id.* The exigencies faced by law enforcement officers dealing with motor vehicles do not evaporate when the vehicle is removed from the scene of the stop to a police station or other place of impoundment. *United States v. Ross*, 456 U.S. 798, 807 n.9, 102 S. Ct. 2157, 2163 n.9, 72 L. Ed. 2d 572, 583 n.9 (1982) ("[I]f an immediate search on the scene could be conducted, but not one at the station if the vehicle is impounded, police often simply would search the vehicle on the street—at no advantage to the occupants, yet possibly at certain costs to the police."); *see United States v. Watts*, 329 F.3d 1282, 1286 (11th Cir. 2003) ("[T]he requirement of exigent circumstances is satisfied by the 'ready mobility' *inherent* in all automobiles that reasonably appear to be capable of functioning." (Emphasis in original.)).

In a more recent phase of the evolution of the automobile exception, the Court disavowed a "special exigency"[4] requirement for searches of readily mobile vehicles, and provided additional rationales for allowing

---

[4]We use the term "special exigency" to refer to some circumstance beyond the inherent mobility of the vehicle that makes it impossible or impractical for the police to obtain a search warrant prior to the vehicle being moved away. *United States v. Graham*, 275 F.3d 490, 509–10 (6th Cir. 2001) (noting the Supreme Court "has emphasized that no special exigency is required to conduct a warrantless search of an automobile when the car is mobile and the searching officer has probable cause to believe that fruits of a crime may be present in the automobile"). The Supreme Court has alternatively used the phrase "separate exigency" to refer to the same concept. *See Maryland v. Dyson*, 527 U.S. 465, 467, 119 S. Ct. 2013, 2014, 144 L. Ed. 2d 442, 445 (1999) ("[T]he 'automobile exception' has no separate exigency requirement.").

warrantless searches of automobiles based on probable cause. In *California v. Carney*, 471 U.S. 386, 105 S. Ct. 2066, 85 L. Ed. 2d 406 (1985), a case involving a search of a mobile home, the Court acknowledged the "ready mobility" rationale for the automobile exception, but noted the exception is also justified based on the reduced expectation of privacy, as compared to the home or office, that individuals have in their automobiles. *Carney*, 471 U.S. at 391, 105 S. Ct. at 2069, 85 L. Ed. 2d at 413 (citing *South Dakota v. Opperman*, 428 U.S. 364, 367, 96 S. Ct. 3092, 3096, 49 L. Ed. 2d 1000, 1004–05 (1976)). This decreased expectation of privacy results from the "pervasive regulation of vehicles capable of traveling on the public highways." *Id.* at 392, 105 S. Ct. at 2069, 85 L. Ed. 2d at 413.

In *Texas v. White*, 423 U.S. 67, 96 S. Ct. 304, 46 L. Ed. 2d 209 (1975) (per curiam), officers stopped the defendant at a bank drive-through window on suspicion of attempting to pass fraudulent checks. 423 U.S. at 67, 96 S. Ct. at 305, 46 L. Ed. 2d at 211. A bank employee had observed the defendant try to put something between the seats of the vehicle he was driving. *Id.* The officers arrested White and transported him and his car to the police station, where they questioned White and searched the vehicle. *Id.* at 67–68, 96 S. Ct. at 305, 46 L. Ed. 2d at 211. Although the trial court found the officers had probable cause to believe contraband was in the vehicle, the Texas Court of Criminal Appeals held four checks found during the search of the vehicle were obtained in violation of White's Fourth Amendment rights. *Id.* at 68, 96 S. Ct. at 305, 46 L. Ed. 2d at 211. The Supreme Court reversed, holding the search at the station house was valid because probable cause to believe the car contained contraband did not evaporate when the car was removed from the scene of the seizure. *Id.* Probable cause persisted at the station house, and therefore no showing of

exigency beyond the vehicle's inherent mobility was required to sustain the warrantless search of the vehicle. *Id.* ("[P]olice officers with probable cause to search an automobile at the scene where it was stopped could constitutionally do so later at the station house without first obtaining a warrant.").

In *Michigan v. Thomas*, 458 U.S. 259, 102 S. Ct. 3079, 73 L. Ed. 2d 750 (1982) (per curiam), law enforcement officers stopped a vehicle for a traffic violation and observed an open bottle of liquor on the passenger seat floorboard. 458 U.S. at 259, 102 S. Ct. at 3080, 73 L. Ed. 2d at 752. The officers placed the driver, Thomas, under arrest for possession of open intoxicants in a motor vehicle. *Id.* During an inventory search conducted before the vehicle was towed from the scene of the arrest, an officer located two bags of marijuana in the unlocked glove compartment. *Id.* at 260, 102 S. Ct. at 3080, 73 L. Ed. 2d at 752. A second officer then conducted a more thorough search, which included checking under the dashboard and inside the locked trunk. The officer located a loaded revolver inside the air vents under the dashboard. The Michigan Court of Appeals held the search did not fit within the automobile exception "because both the car and its occupants were already in police custody [thus] there were no 'exigent circumstances' justifying a warrantless search for contraband." *Id.* at 261, 102 S. Ct. at 3080, 73 L. Ed. 2d at 752–53. The Supreme Court reversed, stating that "when police officers have probable cause to believe there is contraband inside an automobile that has been stopped on the road, the officers may conduct a warrantless search of the vehicle, even after it has been impounded and is in police custody." *Id.* The Court further clarified,

> the justification to conduct such a warrantless search does not vanish once the car has been immobilized; nor does it depend upon a reviewing court's assessment of the likelihood in each particular case that the car would have been driven away, or

that its contents would have been tampered with, during the period required for the police to obtain a warrant.

*Id.* at 261, 102 S. Ct. at 3081, 73 L. Ed. 2d at 753.

In *Maryland v. Dyson,* 527 U.S. 465, 467, 119 S. Ct. 2013, 2014, 144 L. Ed. 2d 442 (1999) (per curiam), the Court expressly rejected the argument that the automobile exception does not apply in the absence of a separate showing of exigency. The defendant's vehicle was stopped and searched on the street based on a tip from a reliable informant that the vehicle the defendant was driving would be carrying a large quantity of cocaine. *Id.* at 466, 119 S. Ct. at 2013, 144 L. Ed. 2d at 444. The Maryland Court of Special Appeals reversed the defendant's conviction for possession of crack cocaine, holding that "in order for the automobile exception to the warrant requirement to apply, there must not only be probable cause to believe that evidence of a crime is contained in the automobile, but also a separate finding of exigency precluding the police from obtaining a warrant." *Id.* The Supreme Court reversed, stating "under our established precedent, the 'automobile exception' has no separate exigency requirement." *Id.* at 467, 119 S. Ct. at 2014, 144 L. Ed. 2d at 445. The Maryland court's finding of "abundant probable cause" to believe the readily mobile vehicle contained contraband "alone satisf[ied] the automobile exception to the Fourth Amendment's warrant requirement." *Id.*

We have previously applied the "inherent exigency" rationale for warrantless probable-cause searches and seizures of readily mobile vehicles undertaken prior to the vehicle's impoundment. *State v. Cain,* 400 N.W.2d 582, 585 (Iowa 1987) (noting "recent decisions of the United States Supreme Court and this court . . . have made it clear that the exigency requirement is always satisfied by a vehicle's inherent mobility"); *Lam,* 391 N.W.2d at 248 ("The Court's decision [in *Carney*] makes it clear that under the automobile

exception which was created in recognition of the decreased expectation of privacy accorded to a vehicle and the exigencies associated with it, a warrantless search of a vehicle may be made if the authorities have probable cause."). We have also upheld against both federal and Iowa constitutional challenges a vehicle search that was undertaken with probable cause at a police station after the defendant's arrest. *State v. Holderness*, 301 N.W.2d 733, 737 (Iowa 1981) (upholding against federal and Iowa constitutional challenges a warrantless vehicle search based on probable cause at a police station). In each of these cases, probable cause supporting a warrantless search existed at the scene of the arrest or stop.[5] This case requires us to decide whether probable cause to conduct a warrantless automobile-exception search can arise during an inventory search of a vehicle after it has been removed from the scene of the stop and seizure. We conclude that it can.

In *State v. Edgington*, 487 N.W.2d 675 (Iowa 1992), the defendant was stopped for speeding. He was arrested after he admitted he was driving with a suspended license. Before having the vehicle towed, the arresting officer commenced an inventory search and discovered a loaded handgun under the seat and a jewelry box and jewelry on the back seat. 487 N.W.2d at 677. The inventory search was interrupted when the tow truck arrived and took the vehicle away. When the search was completed at another location, numerous stolen items were found in the trunk. We concluded the search of the passenger compartment of the vehicle at the scene of the stop was incident to the arrest and therefore valid. *Id.* at 678 (citing *New York v.*

---

[5]Although neither Cain nor Lam posed a challenge to a warrantless probable cause search of a vehicle after impoundment, we have upheld searches that were undertaken, at least in part, after impoundment as well. *See State* v. *Edgington*, 487 N.W.2d 675, 677–78 (Iowa 1992) (upholding later warrantless search of an impounded vehicle after a gun was discovered under the seat during an inventory search at the scene of the stop).

*Belton*, 453 U.S. 454, 460, 101 S. Ct. 2860, 2864, 69 L. Ed. 2d 768, 775 (1981)). The discovery of the handgun and jewelry supplied the officers with probable cause to believe the vehicle contained additional contraband. Finding exigent circumstances and probable cause, we upheld under the automobile exception the search of the trunk conducted after the vehicle was towed from the scene of the arrest. *Id.* Having concluded the search was valid under the automobile exception, we did not address Edgington's claim that the impoundment and the inventory search of his car violated the police department's regulations which required the arresting officers to provide the defendant with an alternative to impoundment. *Id.* at 679.

Allensworth does not dispute that the marijuana discovered in the console during the inventory search and the anonymous tip received before the inventory began gave the officer probable cause to suspect the vehicle contained additional contraband. He contends, however, the officers conducting the inventory search were required, after they discovered the marijuana, to stop the inventory and request a search warrant before they could legally extend the search beyond the scope of the inventory. We disagree. Allensworth's Fourth Amendment challenge based on the claimed failure of the officers to comply with their departmental rules governing inventory searches is, like Edgington's, without merit. The State correctly posits that whether or not the search subsequent to the discovery of the marijuana was completed in compliance with the sheriff's inventory search rules, the search of the vehicle driven by Allensworth at the time of the stop was reasonable under the automobile exception. Probable cause for an automobile exception search "may evolve from a proper investigatory stop of a vehicle." *Id.* at 678. We conclude it may also evolve from the discovery of contraband in the course of a proper inventory search as it did in

*Edgington. Id.* at 678–79. An automobile exception search may be "as thorough as a magistrate could authorize in a warrant particularly describing the place to be searched." *Ross,* 456 U.S. at 800, 102 S. Ct. at 2159, 72 L. Ed. 2d at 578; *accord Carroll,* 267 U.S. at 172–73, 45 S. Ct. at 292, 26 L. Ed. at 559–60 (scope of automobile-exception search included tearing open vehicle's seat cushion to find suspected contraband). Thus, what began as an inventory search expanded to a broader automobile-exception search that properly included the opening of the horn cap on the steering column.

In finding the automobile exception inapplicable in this case, the district court relied upon language in *Edgington* and *Holderness* suggesting probable cause and exigent circumstances must arise *at the scene of the stop* to justify a later search at the station house under the automobile exception. *See Edgington,* 487 N.W.2d at 677–78 ("Previously, we have stated that the automobile exception to the fourth amendment requirement of a search warrant is applicable if probable cause and exigent circumstances exist at the time the automobile is stopped by police."); *Holderness,* 301 N.W.2d at 736–37 ("[E]xigent circumstances are necessary only initially; the absence of exigent circumstances at the time of the actual search is irrelevant."); *see also State v. Olsen,* 293 N.W.2d 216, 220 (Iowa 1980) ("It is now clear that the absence of exigent circumstances for the later search is wholly irrelevant. Exigent circumstances are necessary only initially."). As detailed above, under prevailing Fourth Amendment law, the only exigency required to justify a warrantless search of a vehicle is the vehicle's ready mobility. *Cain,* 400 N.W.2d at 585 (noting "[m]ore recent decisions of the United States Supreme Court and this court . . . have made it clear that the exigency requirement is always satisfied by a vehicle's

inherent mobility"). The essential teaching of *Edgington*, *Holderness*, and *Olsen* is that sufficient exigency exists to justify a warrantless search of a readily mobile vehicle even after the vehicle has been impounded and removed to another location. Our decisions in those cases should not be understood to stand for the proposition that if probable cause for an automobile-exception search does not arise at the scene of a stop or seizure, it cannot arise later in the course of an inventory search conducted after the vehicle has been impounded and removed to another location.[6]

The fact that the vehicle had been impounded and removed from the scene of the seizure before an inventory search was commenced and probable cause arose for the broader automobile exception search is of no constitutional moment. Under the substantial body of case law establishing the automobile exception, the reasonableness of the search simply cannot turn on the fortuity of whether the inventory search was commenced and

---

[6]Our conclusion is guided by the overriding concern in Fourth Amendment cases that the reasonableness of the search or seizure be determined by balancing the need for the search against the individual's privacy interest. *United States v. Knights*, 534 U.S. 112, 118–19, 122 S. Ct. 587, 591, 151 L. Ed. 2d 497, 505 (2001) ("The touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests."). As demonstrated by the cases permitting searches of impounded vehicles under the automobile exception, the State's need to conduct an immediate search remains static once probable cause arises, regardless of whether the vehicle remains at the scene of the stop or has already been impounded. Similarly, the individual's privacy interest in the contents of the vehicle remains static from the scene of the arrest throughout the duration of the impoundment—the individual does not gain a greater interest in keeping the contents of the vehicle secret simply because officers choose to impound the vehicle. *See* Note, *Warrantless Searches and Seizures of Automobiles*, 87 Harv. L. Rev. 835, 840 (1974) (noting the privacy interest implicated in a vehicle search is the defendant's interest in "attempts at secrecy" of the automobile's contents). The spatial and temporal limitation on the emergence of probable cause urged by Allensworth and applied by the district court would not provide any greater protection to the privacy interest at stake in an automobile search. Requiring, as a precondition to a finding of reasonableness, that probable cause to support an automobile exception search arise before impoundment would therefore afford "no advantage to the occupants," and we decline to impose such a limitation. *Ross*, 456 U.S. at 807 n.9, 102 S. Ct. at 2163 n.9, 72 L. Ed. 2d at 583 n.9.

contraband was discovered before or after the car was removed from the scene of the stop or seizure. When probable cause arose at the police station, the vehicle was still sufficiently mobile to render the situation exigent and the warrantless search supported by probable cause reasonable. Allensworth's motion to suppress is without merit and the district court erred in suppressing the methamphetamine.

**IV.    Conclusion.**

The search of the steering column of Allensworth's vehicle was based on probable cause that arose during a lawful inventory search. A warrantless search of the vehicle's steering column was therefore reasonable under the Fourth Amendment. We reverse the district court's suppression of the methamphetamine found in the steering column and remand the case for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

All justices concur except Streit, J., who takes no part.