# IN THE COURT OF APPEALS OF IOWA

No. 14-1715
Filed August 19, 2015

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**DAVID V. KUHLEMEIER,**
Defendant-Appellant.

_____

Appeal from the Iowa District Court for Emmet County, Patrick M. Carr, Judge.

David Kuhlemeier appeals from his conviction for burglary in the third degree. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Shellie L. Knipfer, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Alexandra Link, Assistant Attorney General, and Douglas R. Hansen, County Attorney for appellee.

Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**VOGEL, P.J.**

David Kuhlemeier appeals from his conviction for burglary in the third degree. He asserts the district court improperly denied his motion to suppress arguing, first, that the arresting officer did not have reasonable suspicion to stop his vehicle, second, that there was no probable cause to arrest him, and third, that no exception to the Fourth Amendment authorized the search of his vehicle; consequently, the evidence discovered in his vehicle should have been suppressed. Alternatively, Kuhlemeier frames this as an ineffective-assistance-of-counsel claim.

We agree with the district court the motion was untimely filed, and therefore, his arguments asserted in the motion to suppress were waived. Nonetheless, no violation of Kuhlemeier's Fourth Amendment rights occurred, and the evidence was properly admitted. Consequently, he cannot succeed on his ineffective-assistance claim, and we affirm his conviction.

**I. Factual and Procedural Background**

On September 17, 2013, at approximately 9:30 p.m., a bar and grill owner—Rick Dale—observed a blue vehicle parked in an alley behind his business in Armstrong, Iowa. A city shed containing donated pop cans was across the alley from the bar and grill, and the shed had recently had cans stolen from it.[1] Dale called the police, and Chief of Police Craig Merrill responded. Chief Merrill inspected the unoccupied car, noted the front passenger seat had been removed, and a white storage tub was in its place. He did not observe any

---

[1] This shed was city property and a place for residents to donate cans to help pay for Fourth-of-July fireworks.

incriminating evidence. After running the vehicle's license plate, he left. The vehicle was a blue Chevy Camaro.

Fifteen to twenty minutes later, Dale noticed the vehicle had moved a quarter-block down the alleyway. He also heard an individual loading a black bag that contained what he stated sounded like pop cans. He again called the police. Chief Merrill came back to the scene, and by that time, the vehicle was gone, but the door to the city shed was partially open. After driving around the area, Chief Merrill saw the vehicle heading east on the highway and ran the license plates, which confirmed it was the same Camaro seen earlier outside the bar and grill.

Chief Merrill caught up to the vehicle and initiated a traffic stop. Kuhlemeier was the driver and, after Chief Merrill asked where he was coming from, stated he was traveling from a hog house in Minnesota. He denied being outside the bar and grill, but once Chief Merrill informed Kuhlemeier that he had seen his vehicle at that location, Kuhlemeier admitted he had stopped in town briefly to smoke cigarettes.

Visible to the officer was a box of spools of copper wire in the front seat area.[2] While Chief Merrill was questioning him, Kuhlemeier was attempting to pull sweatshirts or towels over the box so as to cover up the wire; when asked why he was doing this, Kuhlemeier stated he was trying to prevent the wire from poking him. In the white storage container in the front seat area, there was a black plastic bag, which contained pop cans. During the investigative stop,

---

[2] Kuhlemeier claimed the wire and the cans came from the hog house in Minnesota where he had been working. He was unable to provide any verification in support of this claim.

Kuhlemeier was sweating profusely and appeared nervous, so much so that Chief Merrill suspected Kuhlemeier was impaired. He requested Kuhlemeier complete field sobriety tests; Kuhlemeier consented and passed.

Chief Merrill arrested Kuhlemeier for the theft of the pop cans. Two deputies arrived at the scene, after which the vehicle was towed to a tow yard. Chief Merrill returned to the city shed to determine if items were missing but could not verify that one bag of cans was missing from the shed. The search of the Camaro revealed a bag of cans, seven spools of copper wire, and a roll cart with wet tires. Upon further investigation, it was determined Kuhlemeier had stolen this wire from an Alliant Energy building located close to the bar.

The State charged Kuhlemeier by trial information on October 11, 2013, with theft in the second degree, burglary in the third degree, and possession of burglar tools. He was charged for the theft of the copper wire but not for theft of the pop cans. A written arraignment with a not-guilty plea was filed on October 25. An order entered on December 10, extended deadlines for discovery and pretrial motions until January 15, 2014. Kuhlemeier's first attorney withdrew, and second trial counsel entered an appearance on May 23, 2014.

On July 18, 2014, Kuhlemeier filed a motion to suppress; the State countered the motion was untimely. Following a hearing on August 4, the district court denied the motion, finding that it was untimely, but also found that even if it were to consider the merits, exceptions to the Fourth Amendment's warrant requirement applied. A trial on the minutes was held with regard to the burglary count, and the State dismissed the other two charges. On October 6, 2014, the district court found Kuhlemeier guilty of burglary in the third degree, in violation of

Iowa Code sections 713.1 and 713.6A(1) (2013), and he was sentenced to a term of incarceration not to exceed five years. Kuhlemeier appeals.

## II. Standard of Review

Our review of constitutional issues is de novo. *State v. Freeman*, 705 N.W.2d 293, 297 (Iowa 2005).

## III. Timeliness of the Motion to Suppress

The State contends Kuhlemeier's motion was untimely filed; consequently, his arguments are waived and error was not preserved. We agree. Iowa Rule of Criminal Procedure 2.11(4) provides that a motion—in this case, a motion to suppress—should be filed no later than forty days after arraignment. Kuhlemeier was arraigned on October 25, 2013; however, his motion to suppress was not filed until July 18, 2014. Moreover, good cause was not established to excuse this significant delay. *See State v. Ortiz*, 766 N.W.2d 244, 250 (Iowa 2009) (noting good cause for delay may prevent the argument from being waived). Though trial counsel did not enter an appearance until May 23, 2014, the motion to suppress was still not filed until two months following his appearance. Consequently, we agree with the district court the motion to suppress was untimely filed, and Kuhlemeier's claims asserted in the motion to suppress were waived. *See id.* (noting if the motion to suppress is not timely filed, and good cause is not established, arguments contained in a motion to suppress are waived).

## IV. Ineffective Assistance of Counsel

Alternatively, Kuhlemeier asserts trial counsel was ineffective for failing to timely file the motion to suppress and, thus, properly preserve for appellate

review his Fourth Amendment arguments. Specifically, he argues his Fourth Amendment rights were violated because: (1) there was no reasonable suspicion to initiate the traffic stop; (2) chief Merrill did not have probable cause to arrest him; and (3) his vehicle was unlawfully searched because the police did not have a written policy and procedure when conducting inventory searches, nor did the automobile exception apply.

A defendant may raise an ineffective-assistance claim on direct appeal if the record is adequate to address the claim. *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006). We may either decide the record is adequate and rule on the merits, or we may choose to preserve the claim for postconviction proceedings. *Id.* To succeed on this claim, the defendant must show, first, that counsel breached an essential duty and, second, that he was prejudiced by counsel's failure. *Id.*

**A. Initial Stop**

When no warrant exists for a search or seizure, it is per se unreasonable under the Fourth Amendment unless an exception applies. *Freeman*, 705 N.W.2d at 297. If an officer has reasonable suspicion that a crime was occurring or had just occurred, he may initiate an investigatory stop and remain in compliance with the Fourth Amendment. *See Terry v. Ohio*, 392 U.S. 1, 21–22 (1968). Additionally:

> In determining whether an investigatory stop of a vehicle complies with the protections provided by the Fourth Amendment, we must consider whether the facts articulated by the officer support the intrusion on the individual's privacy and whether the scope of the intrusion is reasonably related to the circumstances which justified the intrusion.

*State v. Kinkead*, 570 N.W.2d 97, 100 (Iowa 1997) (internal citation omitted).

Given this standard, Chief Merrill had reasonable suspicion to conduct an investigatory stop. This conclusion is supported by the fact he had Dale's statement that Dale heard someone place a black plastic bag—which sounded like it had pop cans in it—in the blue Camaro and drive away.[3] When Chief Merrill responded, the door to the city shed had been left part-way open; furthermore, he knew that it had recently been burglarized. Knowing the vehicle was in the area, Chief Merrill located it driving along the highway and, after running the license plate, confirmed it was the same vehicle earlier seen by him and Dale. When these facts are considered by a reasonable and prudent person, the officer had specific, articulable facts on which he could rely when concluding a crime—the theft of the pop cans—had occurred. *See id.* Therefore, a proper investigatory stop was conducted, and Kuhlemeier's Fourth Amendment rights were not violated in this regard. *See id.* at 100–01 (holding the officer had reasonable suspicion to initiate an investigatory stop).

**B. Arrest**

Though reasonable suspicion existed for the stop, probable case was required to arrest Kuhlemeier. *See Freeman*, 705 N.W.2d at 298. "Probable cause is present if the totality of the circumstances as viewed by a reasonable and prudent person would lead that person to believe that a crime has been or is being committed and that the arrestee committed or is committing it." *Id.* (internal citation omitted).

---

[3] Dale testified: "I heard cans in a black bag—I seen the black bag and I heard cans in it."

As noted before, there was sufficient evidence that a theft of the pop cans had occurred. Moreover, Chief Merrill obtained further information during the stop, including his observation that the black plastic bag did in fact contain pop cans. Kuhlemeier also acted suspiciously during the stop—he was sweating profusely, appeared nervous, lied about not having been in town, and could not give a credible explanation as to where the pop cans, as well as the copper wire, were acquired. Notably, these items were not visible when Chief Merrill and Dale first approached the vehicle just a short time before the stop, yet Kuhlemeier said he had brought all of the items with him from Minnesota. Given the totality of the circumstances, this information supports Chief Merrill's conclusion the theft of the cans had occurred and, particularly given Kuhlemeier had the bag of cans in his possession, that Kuhlemeier was the person who committed the crime. Consequently, probable cause existed for Kuhlemeier's arrest, and his Fourth Amendment rights were not violated when he was detained. *See id.*

### C. Search of the Vehicle

We also do not agree with Kuhlemeier's contention his vehicle was illegally searched, given the automobile exception applied.[4] The automobile exception to the warrant requirement is satisfied when there is probable cause to believe evidence of a crime can be found within the vehicle, combined with the existence of exigent circumstances. *State v. Maddox*, 670 N.W.2d 168, 171

---

[4] The State contends the plain-view exception also applies with regard to the seizure of the copper wire; however, the incriminating nature of the object must be immediately apparent to the officer for this exception to nullify the warrant requirement. *See State v. Chrisman*, 514 N.W.2d 57, 60 (Iowa 1996). Here, the incriminating nature of the copper wire was not apparent to Chief Merrill, as evidenced by the fact Kuhlemeier was arrested for the theft of the cans, not the wire. Rather, it was only upon later investigation police established the wire had been stolen. Consequently, the plain-view exception does not apply. *See id.*

(Iowa 2003). Moreover, the exigency element within this exception can be satisfied even when the vehicle is in the custody of the State. *State v. Allensworth*, 748 N.W.2d 789, 795–96 (Iowa 2008) (holding the automobile exception applied, even though probable cause did not exist until the vehicle was being searched while it was impounded).

As previously stated, the stop of Kuhlemeier's vehicle was proper; consequently, the initial seizure of the vehicle was reasonable and not a violation of the Fourth Amendment. *See Kinkead*, 570 N.W.2d at 100. Furthermore, probable cause existed—in the form of the bag of cans—that evidence of a crime was in the car. *See Maddox*, 670 N.W.2d at 173 (holding probable cause existed that evidence of criminal activity was in the defendant's truck, such that the automobile exception applied to the police's search, due to the defendant's evasive statements to law enforcement). This probable cause, combined with the exigency of the circumstances with regard to the officers' need to search the vehicle, rendered the automobile exception applicable. *See Allensworth*, 748 N.W.2d at 793 (noting "[t]he exigencies faced by law enforcement officers dealing with motor vehicles do not evaporate when the vehicle is removed from the scene of the stop to a police station or other place of impoundment"). Consequently, the warrantless search of the vehicle was not illegal, and Kuhlemeier's claim fails. *See id.* at 794–95.

For the foregoing reasons, Kuhlemeier's Fourth Amendment rights were not violated; therefore, counsel was not ineffective for failing to timely file the motion to suppress. *See State v. Greene*, 592 N.W.2d 24, 29 (Iowa 1999)

(holding counsel is not ineffective if no essential duty is breached). Accordingly, we affirm Kuhlemeier's conviction and sentence for burglary in the third degree.

**AFFIRMED.**