# IN THE COURT OF APPEALS OF IOWA

No. 23-1466
Filed October 16, 2024

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**WALTER DEON LATRELL BAYLOR,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Muscatine County, Jeffrey D. Bert, Judge.

The defendant appeals the denial of his motion to suppress. **AFFIRMED.**


Travis M. Visser-Armbrust (until withdrawal) of TVA Law PLLC, Sheldon, and Michael H. Johnson of Johnson Law Firm, Spirit Lake, for appellant.

Brenna Bird, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee.


Considered by Greer, P.J., and Ahlers and Badding, JJ.

**GREER, Presiding Judge.**

After a warrantless search of Walter Baylor's vehicle, which resulted in officers finding a digital scale with drug residue in an open glove box and drugs and drug paraphernalia in the vehicle's trunk, the district court first suppressed the admission of everything found, except for the scale. The State moved to reconsider the ruling, and the district court then reversed course and denied the motion to suppress. Baylor appeals the district court's reversal of the partial grant of his motion to suppress following his convictions.[1] He asserts this was an improperly conducted inventory search and that the district court was correct when it applied *State v Ingram*, 914 N.W.2d 794 (Iowa 2018) to exclude all evidence collected after the discovery of the scale. But after the district court reversed course, Baylor urges the new reasoning is flawed as the search was unconstitutional when the deputies continued to search his vehicle against their internal policies and because the State did not meet its burden to show any exception to the warrant requirement existed. The State argues it met its burden to show that the warrantless search fell within a recognized exception, so the district court was correct by changing course. Upon our de novo review, we affirm the ruling of the district court.

---

[1] Following a trial on the minutes, Baylor was convicted of one count of possession of a controlled substance, pursuant to Iowa Code section 124.401(1)(d) (2021), and one count of eluding, pursuant to section 321.279(3)(a). He also pled guilty to one count of stalking and violation of protective order, pursuant to section 708.11(3)(b)(1), and two counts of first-degree harassment, pursuant to section 708.7(2).

## I. Background Facts and Prior Proceedings.

On July 12, 2021, law enforcement was informed by Baylor's ex-girlfriend and her father about Baylor's concerning behavior toward her, including sending threatening messages, attempting to run her off the road, and a specific threat that he would shoot the ex-girlfriend the next time he saw her. Law enforcement was told to look for Baylor in a silver vehicle with missing hubcaps. In the early morning hours of July 24, Muscatine County Sheriff's Deputy Dave Hallet spotted a vehicle matching that description; he also noticed the vehicle was missing license plates and had a headlight out. Deputy Hallet initiated a traffic stop with flashing lights, but the driver of the vehicle disregarded his lights and, instead, increased its speed. At that point, Deputy Hallet turned on his sirens and the vehicle continued—at times traveling more than 100 miles per hour through two counties and into Davenport city limits. Other members of law enforcement joined the chase until finally, using stop sticks that deflated the vehicle's tires and a PIT maneuver,[2] Baylor's vehicle was stopped. When the vehicle came to a stop, Baylor fled on foot. After a short pursuit he was caught.

As the vehicle was now stopped, the deputies called to have it towed and impounded. Prior to impoundment, the deputies started an inventory search, which as Deputy Hallet explained, is done to document anything of "evidentiary value" or "for the protection of the person whose car it is who has anything valuable in there." Likewise, the deputies conducted an "article search," because law enforcement also knew from an earlier incident with Baylor and his ex-girlfriend

---

[2] A pursuit intervention technique is known as a PIT maneuver.

involving threats with a weapon that Baylor might have a firearm. Although Baylor identified that he was "Walter Baylor," he had no identification on him, so the deputies searched the car for his identification plus any insurance documentation or car registration to ascertain ownership of the vehicle. Moreover, Deputy Hallet was also aware that Baylor was wanted on multiple outstanding warrants. As Deputy Hallet looked for the registration, he saw a digital scale with drug residue on it in the already open glove box compartment. As he later testified at the suppression hearing, it was at this point the investigation "shifted" to a full search of the vehicle for narcotics. From there, the officers found eleven empty marijuana containers; three scales; a box of baggies; and four sealed bags labeled THC gummies, containing 200 grams of THC infused gummies. All the evidence except the digital scale from the glove box was found in a bag in the trunk.

Baylor moved to suppress the evidence found in his vehicle, claiming that the search violated the Fourth Amendment of the United States Constitution; article I, section 8 of the Iowa Constitution; or both. Baylor contended an inventory search was not warranted because he was apprehended outside the vehicle, had not returned to the vehicle after running, and the vehicle was disabled and being impounded. Additionally, he asserted that once the scale was discovered in the glove box compartment, the deputy was required to call for a search warrant under the Muscatine County Sheriff's towing and impound internal rules. The internal rules referenced conforming to *Ingram* and provided that "[i]f law enforcement discovers contraband during an inventory search, the search should immediately stop, and law enforcement should obtain a warrant to search the entire vehicle, including any closed containers."

After a suppression hearing involving testimony from only Deputy Hallet, the district court held that that the inventory exception did not excuse the warrantless search of the vehicle. Pointing to *Ingram*, the district court found that the deputy failed to follow department policy involving the impoundment procedure, which required him to stop the search and obtain a warrant once he discovered the digital scale. And because the State failed to prove factors supporting the "plain view or automobile exception to the warrant requirement," the court ordered that all evidence except for the digital scale in the open glove box compartment was inadmissible.

The State moved to reconsider, arguing that the inventory exception did not preclude a search under the automobile exception or the plain view doctrine. After reconsidering, the district court denied Baylor's motion to suppress in full, concluding the deputy was justified in conducting a warrantless search under the automobile exception as outlined in *State v. Allensworth*, 748 N.W.2d 789, 792–96 (Iowa 2008). Baylor appeals from this second suppression ruling.

## II.     Standard of Review.

Baylor raises a challenge under both the federal and Iowa Constitutions. "When a defendant challenges a district court's denial of a motion to suppress based upon the deprivation of a state or federal constitutional right, our standard of review is de novo." *State v. Hauge*, 973 N.W.2d 453, 458 (Iowa 2022) (citation omitted). This means "[w]e review the entire record to independently evaluate the totality of the circumstances and examine each case 'in light of its unique circumstances.'" *Id.* (quoting *State v. Brown*, 930 N.W.2d 840, 844 (Iowa 2019)).

### III.    Analysis.

We start where the district court ultimately landed—it applied the automobile exception to the warrantless search but rejected the plain view doctrine and reconsidered Baylor's theory involving the violation of the impoundment policy. The State asks us to affirm, contending the deputy had probable cause to search the vehicle, including the trunk, thus implicating the automobile exception. Baylor argues that neither an inventory search nor the automobile exception allow a warrantless search of the trunk of the vehicle where the contraband was found according to the Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution.[3] Central to Baylor's argument is that the deputy violated the county's impoundment policy, *Ingram* applies, and the deputy was required to stop the search and then obtain a warrant.  *See Ingram,* 914 N.W.2d at 820 (addressing a search of a closed container during a warrantless inventory search of an impounded vehicle and requiring that the police advise the owner or operator of the options to impoundment; allow the person to retrieve personal items from the vehicle; and if the vehicle is impounded, store closed containers found within the vehicle for safekeeping as a unit unless the owner or operator directs otherwise).  And Baylor argues that the district court's reliance on *Allensworth* was improper because *Ingram* is more recent authority and controls the circumstances found here.  *Allensworth*, 748 N.W.2d at 789; *Ingram,* 914 N.W.2d at 820–21.

---

[3] Although Baylor cited both the federal and state constitutions, he has not argued that the state constitution affords him more protection than its federal counterpart. As our supreme stated in *State v. Storm*, 898 N.W.2d 140, 148 (Iowa 2017), "[w]e have continued to follow the federal automobile exception for decades."  Because Baylor does not argue that we should do otherwise, we will continue that approach here.  *See State v. Dudley*, 766 N.W.2d 606, 624 (Iowa 2009).

Searches without a warrant are presumed to be unreasonable, and the State has the burden to prove an exception to the warrant requirement applies. *State v. Moriarty*, 566 N.W.2d 866, 868 (Iowa 1997) ("When a warrantless search is challenged, the State must demonstrate, by a preponderance of the evidence, that the search came within an exception to the warrant requirement."). In this case, three exceptions were raised at various points: the inventory exception, the plain view doctrine, and the automobile exception. But, with the court relying on the automobile exception to deny the motion, we note it is applicable when "probable cause and exigent circumstances exist at the time the car is stopped by police." *Storm*, 898 N.W.2d at 145 (citation omitted). "The inherent mobility of motor vehicles satisfies the exigent-circumstances requirement" such that, as to our state constitution, the Iowa Supreme Court declined to require a "case-by-case exigency determination." *Id.* at 145.

Because we are to conduct an "independent evaluation of the totality of the circumstances" established in the record, we discuss the facts developed at the suppression hearing. *See id.* at 144 (citation omitted). First, Baylor did not challenge the legality of the initial stop of the vehicle, and the deputy testified that although the vehicle was damaged, he did not believe it was immobile.[4] Second, the deputy entered the car to conduct an inventory search, but he also intended to obtain paperwork about ownership to verify if it was stolen, as the car had no

---

[4] While at the same time suggesting in his appellate brief that the record be reopened to determine the mobility of the vehicle, Baylor asserts that the vehicle was not a "fleeting target, nor capable of movement" so the automobile exception should not come into play. But the testimony of Deputy Hallet was unrebutted and, thus, we do not address that argument further.

license plates and was just involved in a high-speed chase. Upon entry, the deputy saw an open glove box, and as he looked to see if paperwork might be there, he spotted the digital scale, typically used to weigh narcotics, with residue on it.

Considering these circumstances, when Baylor urges the application of *Ingram* and the consideration of the department's policy, he ignores that the Muscatine County Sheriff's department policies directing impoundment focused on identifying the owner of the vehicle to then follow the steps articulated. Here, once Deputy Hallet started the search for the registration, his observation of the digital scale provided probable cause to search for illegal substances, and the rules directing impoundment were no longer front and center. Also, in contrast, *Ingram* addressed the limits of warrantless inventory searches as opposed to an inquiry over a finding of probable cause that might justify an officer's action in opening a closed bag in a vehicle impounded after a traffic stop. *See* 914 N.W.2d at 798, 820. So, we find the facts and legal theories here distinguishable from those in *Ingram*.

Like in *Allensworth*, which was not overruled by *Ingram*, the deputy here did not follow his department's impound policy to request a warrant upon discovery of illegal substances. *See Allensworth*, 748 N.W.2d at 790 n.1. *Allensworth* mirrors the facts in the instant case. In both *Allensworth* and here, the deputies were alerted to the possible presence of illegal substances—by an anonymous call in *Allensworth* and by sight here. *Id.* at 791. Although in the instant case, the Muscatine County Sheriff's department had a policy involving impoundment, and we may fault the deputy for not adhering to it, there is no constitutional prohibition to an automobile search once probable cause is established. *See id.* at 796

("[W]hether or not the search subsequent to the discovery of the [illegal substance] was completed in compliance with the sheriff's inventory search rules, the search of the vehicle . . . was reasonable under the automobile exception. Probable cause for an automobile exception search 'may evolve from a proper investigatory stop of a vehicle.'" (citation omitted)). Given the totality of the circumstances presented, we find that the reasoning behind our automobile exception cases offers a more reasonable "bright-line rule" to guide the applicability of a warrantless search here. *See Storm,* 898 N.W.2d at 156. The district court properly denied the motion to suppress the evidence seized from the vehicle.

## IV. Conclusion.

In sum, we find there was probable cause to search the vehicle once the digital scale with residue was observed in an open glove box, so the automobile exception applied to search the vehicle. For the reasons stated above, we affirm the district court's ruling denying Baylor's motion to suppress and affirm his conviction and sentence.

**AFFIRMED.**