HECHT, Justice
(dissenting).
Because I would abandon the automobile exception as a categorical exception to the warrant requirement under the Iowa Constitution and conclude on this record that the State failed to prove exigent circum *158 stances justified a warrantless search of Christopher Storm’s car, I respectfully dissent.
I. The Parties’ Positions.
On appeal, Storm challenges the constitutionality of the automobile exception to article I, section 8 of the Iowa Constitution. He contends the mobility of a vehicle is no longer a per se exigency justifying a categorical exception to the warrant requirement for automobiles because officers using widely available communications technology can lawfully obtain a warrant without leaving the scene of a stop. He also asserts the warrantless search of his vehicle based upon probable cause violated article I, section 8 of the Iowa Constitution because no exigency justified the warrant-less search in this case.
The State does not dispute that modem communications technology is available that would enable law enforcement officers • to submit warrant applications from the scene of most roadside stops. Yet, the State offers three primary reasons in support of its position that it is not feasible for law enforcement officers to submit warrant applications from the scene of roadside stops. First, the State argues there is no existing legal authority for electronic warrant applications because Iowa Code section 808.3 (2015) requires warrant applications be submitted and sworn to in a magistrate’s presence.[7] Second, the State asserts electronic applications for warrants would take too much time and unreasonably extend the duration of traffic stops in violating the prohibition on unreasonable seizures under article I, section 8. Finally, the State asserts remote applications are not feasible because of safety'concerns, the complexity of warrant applications, and training concerns. In the alternative, the State contends that even were we to permit remote warrant applications, special exigencies justified the warrantless search of Storm’s vehicle.
I part ways with the majority because I believe the rationale supporting the categorical exception from the warrant requirement for searches of automobiles has outlived the rationale for its adoption. Because existing technology now makes it possible for law enforcement officers to submit applications and for judicial,officers to issue warrants electronically, I can no longer conclude warrantless searches of automobiles are justified solely by virtue of a vehicle’s mobility. On de novo review, I conclude the circumstances surrounding the warrantless search of Storm’s automobile were not exigent, and I would therefore reverse and remand.
II. Standards of Constitutional Interpretation.
When determining whether to adopt a different interpretation of a provision of the Iowa Constitution than an analogue provision of the United States Constitution, we employ an independent approach. State v. Short, 851 N.W.2d 474, 486-87, 492 (Iowa 2014). Within this independent approach, we generally consider factors such as the provision’s text and purpose, our caselaw, authority from other jurisdictions, scholarship and changing circumstances, and practical effects of various interpretations. See State v. Gaskins, 866 N.W.2d 1, 27-35 (Iowa 2015) (Appel, J., concurring). While we often follow federal interpretations out of consideration for interests of uniformity and judicial respect, we do not allow those interests to subvert our consti *159 tutional duty to interpret the Iowa Constitution with fidelity to its letter and purpose. See Short, 851 N.W.2d at 487-89.
For more than ninety years, it has been the rule that we do not presumptively defer—or otherwise delegate our constitutional duties—to the Justices of the United States Supreme Court; rather, we consider whether to follow federal interpretations of the warrant requirement on a case-by-case basis, maintaining strict fidelity to our independent interpretive duties under the Iowa Constitution. See, e.g., State ex rel. Kuble v. Bisignano, 238 Iowa 1060, 1066, 28 N.W.2d 504, 508 (1947) (“It is true Article I, section 8, of the Iowa Constitution is identical in language with the Fourth Amendment. This fact however does not compel us to follow the construction placed on the language by the United States Supreme Court.”)) abrogated on other grounds by Mapp v. Ohio, 367 U.S. 643, 654-55, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081 (1961); State v. Rollinger, 208 Iowa 1155, 1156, 225 N.W. 841, 841 (1929) (“[W]hile the Constitution of this state is almost a verbatim copy of a similar provision of the federal Constitution, this court has thought fit to put a construction thereon which does not correspond with the interpretation of the federal Constitution by the Supreme Court of the United States.”), abrogated on other grounds. by Mapp, 367 U.S. at 654-55, 81 S.Ct. at 1691.
We have repeatedly rejected the argument that we should adopt a “lockstep” policy of judicial deference when interpreting article I, section 8 of the Iowa Constitution to the Supreme Court’s interpretations of the Fourth Amendment. See, e.g., State v. Baldon, 829 N.W.2d 785, 790 (Iowa 2013) (“[Ojur right under principles of federalism to stand as the final word on the Iowa Constitution. is settled, longstanding, and good law.”); State v. Tonn, 195 Iowa 94, 104-07, 191 N.W. 530, 535-36 (1923) (rejecting a lockstep approach to the interpretation of article I, section 8 of the Iowa Constitution in favor of an interpretation of the warrant requirement adopted by other states), abrogated on other grounds by Mapp, 367 U.S. at 654-55, 81 S.Ct. at 1691; see also Gaskins, 866 N.W.2d at 6-7 (majority opinion) (collecting cases); Short, 851 N.W.2d at 481 (collecting cases).
A. The Warrant Requirement. Article I, section 8 of the Iowa Constitution provides,
The right of the people to be sécure in their persons, houses, papers and effects, against unreasonable seizures and searches shall not be violated; and no warrant shall issue but on probable cause, supported by oath or affirmation, particularly describing the place to be searched, and the persons and things to be seized.
Iowa Const, art. I, § 8. “Evidence obtained in violation of th[is] provision! ] is inadmissible.” State v. Carter, 696 N.W.2d 31, 37 (Iowa 2005) (quoting State v. Reinders, 690 N.W.2d 78, 81 (Iowa 2004)).
Article I, section 8 of the Iowa Constitution is an independent source of legal rights and governing principles, and we jealously guard our duty to independently interpret the protections it affords, notwithstanding its similarity to the Fourth Amendment to the United States Constitution. State v. Brooks, 888 N.W.2d 406, 410-11 (Iowa 2016); accord State v. Olsen, 293 N.W.2d 216, 219-20 (Iowa 1980); State ex rel. Kuble, 238 Iowa at 1066, 28 N.W.2d at 508.
The framers of the Iowa ■ Constitution believed the gradual erosion of personal rights undermines the stability of government, so they placed article I, section 8 within a strong and clearly defined bill of rights at the beginning of the Iowa Constitution. State v. Ochoa, 792 N.W.2d 260, 274 *160 (Iowa 2010) (citing 1 The Debates of the Constitutional Convention of the State of Iowa 100-01 (W. Blair Lord rep., 1857), http://www.statelibraryofiowa.org/services/ law-library/iaconst). The section limiting the power of the government to conduct seizures and searches protects individuals from government intrusion into property or protected individual rights. Id. at 273-75.
The first clause of article I, section 8 protects individuals’ legitimate expectations of privacy and interests in property, security, and mobility. See id. at 268, 284-85; see also Short, 851 N.W.2d at 504. The reasonableness of a seizure or search depends on the particular facts of a case. State v. Naujoks, 637 N.W.2d 101, 107 (Iowa 2001). A warrantless search is per se unreasonable unless the state proves by a preponderance of the evidence that the search falls within one of a few specifically established and carefully drawn exceptions to the warrant requirement. Id. at 107-08; see also Baldon, 829 N.W.2d at 791.
The second clause of article I, section 8 requires government officials obtaining a warrant from an independent officer of the court to make a showing of probable cause that is supported by oath or affirmation. Ochoa, 792 N.W.2d at 268-69, 285. This requirement protects individuals from the risks of government error, bias, arbitrary action, corruption, and abuse, prioritizing accuracy in law enforcement over expediency. See id. at 274; see also Brooks, 888 N.W.2d at 418 (Appel, J., dissenting); Baldon, 829 N.W.2d at 829 (Appel, J., specially concurring).
The exceptions to the warrant requirement include the exigent-circumstances exception, which permits a warrantless search with probable cause if “exigent circumstances require that the search be conducted immediately.” Carter, 696 N.W.2d at 37. We have applied this exception to the warrantless search of automobiles, concluding that a readily mobile vehicle poses a per se exigency justifying a warrantless search upon probable cause because the vehicle or its contents may disappear if an officer leaves the scene of a traffic stop to obtain a warrant. State v. Maddox, 670 N.W.2d 168, 171 (Iowa 2003).
B. The Automobile Exception. We adopted the automobile exception to article I, section 8 as a rule of exigency under the Iowa Constitution in Olsen, 293 N.W.2d at 220. In adopting the exception, we followed precedents emanating from federal courts holding that the inherent mobility of a vehicle is an exigency justifying the automobile exception to the Fourth Amendment to the United States Constitution.[8] See id. (concluding federal exigency requirement is met if the vehicle is mobile, its occupants alerted, and its contents at risk of disappearing if a warrant must be obtained).
1. Federal origins of the automobile exception. The automobile exception to the Fourth Amendment began as a judicial response to practical law enforcement problems created by the National Prohibition Act’s ban on the transportation of *161 intoxicating liquors. See Carroll v. United States, 267 U.S. 132, 143-44, 151, 153-54, 45 S.Ct. 280, 281-82, 284, 285-86, 69 L.Ed. 543 (1925) (permitting an exception to the warrant requirement because “goods in course of transportation and concealed in a movable vessel ... readily could be put out of reach of a search warrant”). In Carroll, the Supreme Court held that a warrantless search of an automobile for intoxicating liquors based upon probable cause does not violate the Fourth Amendment “where it is not practicable to secure a warrant.” Id. at 153, 45 S.Ct. at 285. The Court concluded it was not practicable to secure a warrant for the search of a vehicle at a traffic stop “because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.” Id. Because a vehicle’s mobility posed the risk that it could be moved outside the jurisdiction while an officer left to secure a search warrant, the Court approved the warrantless search based on exigency. Id. at 162, 45 S.Ct. at 288.
Importantly, the Supreme Court emphasized in Carroll that if securing a warrant is “reasonably practicable,” it must still be obtained. Id. at 156, 45 S.Ct. at 286; cf. Terry v. Ohio, 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968) (“We do not retreat from our holdings that the police must, whenever practicable, obtain advance judicial approval of searches and seizures through the warrant procedure. ...”).
In subsequent cases, the Supreme Court expanded the contours of the automobile exception recognized in Carroll. The Court concluded in Husty v. United States that a warrantless search of an automobile by a prohibition officer was not unreasonable under the Fourth Amendment even if the officer had sufficient time—after acquiring probable cause but before conducting the subsequent stop and search of the defendant’s car—to procure a search warrant. 282 U.S. 694, 701, 51 S.Ct. 240, 242, 75 L.Ed. 629 (1931). The Supreme Court held in Chambers v. Maroney that the location of the automobile at the time of the search did not matter as long as exigency and probable cause were both obtained at the scene of the stop; thus, a warrant was not required to search a vehicle on probable cause after the vehicle had been relocated from the roadside to the stationhouse.[9] 399 U.S. 42, 52, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970). In either location—at the scene of the stop or at the stationhouse—the Court determined the risk that evidence would disappear before an officer returned toith a search warrant supplied exigency and made it impracticable to require law enforcement officers to procure a search warrant. See id. at 52, 90 S.Ct. at 1982 (“The probable-cause factor still obtained at the station house and so did the mobility of the car....”); Husty, 282 U.S. at 701, 51 S.Ct. at 242 (“In such circumstances, we do not think the officers should be required to speculate upon the c[h]ances of successfully carrying out the search, after the delay and withdrawal from the scene of one or more officers which would have been necessary to procure a warrant.”).
In a series of cases decided after Chambers, the Supreme Court has continued to *162 view the mobility of automobiles as a justification for the automobile exception to the warrant requirement under the Fourth Amendment. In California v. Carney, the Court concluded that a vehicle’s “ready mobility” alone presents a per se exigency. 471 U.S. 386, 394, 105 S.Ct. 2066, 2070-71, 85 L.Ed.2d 406 (1985); see also Maryland v. Dyson, 527 U.S. 465, 467, 119 S.Ct. 2013, 2014, 144 L.Ed.2d 442 (1999) (per curiam) (“[T]he ‘automobile exception’ has no separate exigency requirement.”). The Court also construed “ready mobility” broadly to include vehicles capable of movement and “in a setting that objectively indicates that the vehicle is being used for transportation.” Carney, 471 U.S. at 394, 105 S.Ct. at 2070-71 (footnote omitted). The Court augmented its “ready mobility” rationale with another rationale for the automobile exception—that individuals have a lower expectation of privacy in vehicles than homes because vehicles, unlike homes, are pervasively regulated. Id. at 391-94, 105 S.Ct. at 2069-71.
2. The automobile exception in Iowa. We first applied the automobile exception as a matter of federal law in State v. King, 191 N.W.2d 650, 655 (Iowa 1971). Nearly a decade later, we recognized the automobile exception under article I, section 8 of the Iowa Constitution. See Olsen, 293 N.W.2d at 220.
Our earliest cases applying the federal automobile exception did so within the then-existing exigent-circumstances framework. E.g., State v. Shea, 218 N.W.2d 610, 613 (Iowa 1974) (“[A] peace officer may search an automobile without a warrant when exigent circumstances and probable cause exist.”). We assessed exigency by looking at multiple factors, such as whether the car was movable, its occupants were on alert, and its contents were at risk of disappearing if officers left to secure a warrant. See, e.g., State v. Holderness, 301 N.W.2d 733, 737 (Iowa 1981) (“These facts, coupled with the inherent mobility of the vehicle, created a clear likelihood that the car and its contents might never have been located again had the police departed to obtain a warrant.” (Emphasis added.)); State v. Lam, 391 N.W.2d 245, 249 (Iowa 1986) (“If the automobile had not been seized immediately, there was a clear likelihood that the car and its contents may never have been located again had the police departed to obtain a search warrant.” (Emphasis added.)).
Importantly, from our earliest cases applying the automobile exception under the Fourth Amendment, we concluded a warrant was required for the search of an automobile if it was practicable to obtain one. See, e.g., State v. Schlenker, 234 N.W.2d 142, 144-45 (Iowa 1975); Shea, 218 N.W.2d at 613 (“[Existence of exigent circumstances may relieve an officer from the obligation to obtain a warrant if it is impracticable to do so.” (emphasis added) (quoting State v. Jackson, 210 N.W.2d 537, 539 (Iowa 1973))). In State v. Schlenker, we concluded the fact that an officer actually secured a warrant—later held invalid—to search a vehicle conclusively demonstrated that no exigent circumstances justified the search. 234 N.W.2d at 145. Implicit in this conclusion was a determination that it would have been practicable to secure a warrant authorizing the search of Schlenker’s automobile.
After the Supreme Court determined that the inherent mobility of a vehicle is a per se exigency for purposes of the automobile exception in Carney, we abandoned our more probing exigency inquiry in cases challenging warrantless searches under both the Federal and State Constitutions. See State v. Allensworth, 748 N.W.2d 789, 795 (Iowa 2008) (noting the Supreme Court no longer requires a separate showing of exigency because the. mobility of a *163 vehicle is enough). In State v. Cain, for example, we noted that the state did not have to prove the existence of exigent circumstances supporting a warrantless search under the Fourth Amendment because vehicles are inherently mobile. 400 N.W.2d 582, 585 (Iowa 1987). Likewise, in Maddox, we opined that the inherent mobility of a vehicle “presents an exigent circumstance” under article I, section 8 of the Iowa Constitution. 670 N.W.2d at 171. Our perception of exigency in this context has been based on the risk that if an officer leaves the scene of a stop to secure a warrant, the vehicle or its contents will be gone when the officer returns to perform the search. See, e.g., Lam, 391 N.W.2d at 249; Holderness, 301 N.W.2d at 737; see also Allensworth, 748 N.W.2d at 795 (noting the risk the vehicle will disappear is at the root of the mobility exigency under the Fourth Amendment); Olsen, 293 N.W.2d at 220 (noting.exigency might exist for purposes of article I, section 8, if there is a risk the vehicle’s contents will disappear).
C. Physical Presence Requirement.
Before addressing the merits of Storm’s contention that we should abandon the per se exigency rule for warrantless searches of automobiles under article I, section 8, I will address the district court’s conclusion that Iowa Code section 808.3 requires an applicant for a warrant be in the physical presence of a judicial officer when applying for a warrant. •
Iowa Code section 808.3 establishes “procedural requirements for issuance, execution and return” of a search warrant. See Meier v. Sulhoff, 360 N.W.2d 722, 726 (Iowa 1985). The statute provides,'
A person may make application for the issuance of a search warrant by submitting before a magistrate a written application, supported by the person’s oath or affirmation, which includes facts, information, and circumstances tending to establish sufficient grounds for granting the application, and probable cause for believing that the grounds exist.
Iowa Code § 808,3 (emphasis added).
When interpreting a statute, we seek to determine and enforce legislative intent. Second Injury Fund of Iowa v. Kratzer, 778 N.W.2d 42, 46 (Iowa 2010). In determining legislative intent, we begin with the statute’s text, interpreting undefined terms in accordance -with their ordinary and accepted usage. Id. The plain meaning of a statute is conclusive unless one of the limitations or exceptions to the plain meaning rule applies; for instance, a court may depart'from a plainly worded statute' if:
[ (1) ] applying the language according to its plain meaning would lead to an absurd result, or there is “obvious” or “clear” evidence of contrary legislative intent; [ (2) ] it finds a “specific indication to the contrary;” [(3)] it finds “compelling reasons to hold otherwise;” [(4)] some other section of an act expands or restricts its meaning, or a particular provision is repugnant to an act’s general purview, or other acts in pan material—]or the .relevant legislative history[—jimports a different meaning; [(5)] an act’s plain meaning departs from its policy, and it finds a clearly expressed legislative intention contrary to the statute’s language; [or] [ (6) ] it finds “some other compelling reason” to-disregard an act’s or provision’s plain meaning.
2A Norman J. Singer &’ Shambié Singer, Statutes and Statutory Construction § 46:1, at 163-68 (7th ed. 2014) (footnotes omitted).
A statute is ambiguous if it is susceptible of two or more plausible interpretations. Holiday Inns Franchising, Inc. v. Branstad, 537 N.W.2d 724, 728 (Iowa *164 1995). “Ambiguity may arise from specific language used in a statute or when the provision at issue is considered in the context of the entire statute or related statutes.” Sherwin-Williams Co. v. Iowa Dep’t of Revenue, 789 N.W.2d 417, 425 (Iowa 2010) (quoting Midwest Auto. III, LLC v. Iowa Dep’t of Transp., 646 N.W.2d 417, 425 (Iowa 2002)). If a statute is ambiguous, we consider “the statute’s subject matter, the object sought to be accomplished, the purpose to be served, underlying policies, remedies provided, and the consequences of the various interpretations.” State v. McCullah, 787 N.W.2d 90, 95 (Iowa 2010); see also Iowa Code § 4.6.
In deciding whether an application for a search warrant can be submitted under section 808.3, we must decide whether the phrases “submitting before a magistrate” and “supported by the person’s oath or affirmation” in section 808.3 require that an applicant for a warrant be in the physical presence of a magistrate.[10] I conclude they do not.
1. “Submitting before a magistrate. ” I begin with the phrase “submitting before a magistrate.” Iowa Code § 808.3. The words in this phrase are not defined in Iowa Code chapter 808. By its ordinary meaning, “submit” means “to present or propose to another for review, consideration, or decision” or “to deliver formally.” Submit, Merriam Webster’s Collegiate Dictionary (11th ed. 2012). The term “before” in this context can mean, alternatively, “in front of,” “in the presence of,” or “under the jurisdiction for consideration of.” Before, Merriam Webster’s Collegiate Dictionary. “Magistrate” is defined elsewhere in the Iowa Code to mean “a person appointed under article 6, part 4 to exercise judicial functions.” See Iowa Code § 602.1101(8); cf. id. §§ 602.6401-.6405 (describing appointment, qualifications, and powers of a magistrate). Magistrates have jurisdiction of search warrant proceedings. See id. § 602.6405.
I conclude the phrase “submitting before a magistrate” is ambiguous because it is capable of more than one interpretation. Under the State’s preferred interpretation, the statute requires an applicant for a *165 warrant be physically present with a magistrate. Under the interpretation preferred by Storm, the statute requires written applications to be presented for decision “under the jurisdiction or consideration of’ the magistrate.[11] I find both interpretations to be plausible; hence, I conclude the statute is ambiguous.
Because section 808.3 is ambiguous, I resort to our tools of statutory construction. When interpreting an ambiguous statute, we consider the consequences of various interpretations. State v. Hoyman, 863 N.W.2d 1, 14 (Iowa 2015); see also Iowa Code § 4.6(5). The phrase at issue here concerns the method of delivering a written application to a judicial officer for a decision. The Iowa Court Rules permit written applications and other filings to be electronically submitted in court proceedings. See Iowa Ct. Rs. 16.201, 16.307(2). I perceive no reasonable purpose for requiring personal physical delivery of a written application for a search warrant.
“[W]e interpret statutes when possible to avoid untoward results.” Hoyman, 863 N.W.2d at 13. If we interpret the phrase to require applicants to be physically present with the magistrate when submitting applications for search warrants, we will impose an unnecessary procedural barrier and discourage their use. Resolving the ambiguity in favor of defendants who are the subject of a search and law enforcement officers who have an interest in efficiently applying for warrants, I would conclude the phrase “submitting before a magistrate” in section 808.3 does not require an applicant be in the physical presence when making an application for a search warrant.
2. “Supported by the person’s oath or affirmation. ” I next consider whether Iowa Code section 808.3 requires an applicant for a search warrant be in the physical presence of a magistrate when making an oath or affirmation in support of an application for a search warrant. The text of section 808.3 requires that every warrant application be “supported by the person’s oath or affirmation.” Iowa Code § 808.3. The oath or affirmation requirement is in a wholly separate phrase from the requirement of a signed writing and separated by a comma. Even if physical presence is not required for the submission of a written application, it might still be required for the swearing of an oath or affirmation.
Turning to the plain language of the statute, the word “oath” is commonly defined as “[a] solemn declaration, accompanied by a swearing to God or a revered person or thing, that one’s statement is true or that one will be bound to a promise[.]” Oath, Black’s Law Dictionary (10th ed. 2014). An “affirmation” is considered “[a] solemn pledge equivalent to an oath but without reference to a supreme being or to swearing.” Affirmation, Black’s Law Dictionary. Statements made under oath or affirmation constitute sworn testimony, subjecting the affiant to the penalty of perjury for false statements. See City of Cedar Rapids v. Atsinger, 617 N.W.2d 272, 276 (Iowa 2000).
Section 808.3 is silent on whether physical presence of the affiant before a magistrate is required. At common law, oaths and affirmations were administered in person. See United States v. Turner, 558 F.2d 46, 50 (2d Cir. 1977). However, the modern *166 trend recognizes that oaths and affirmations can be remotely administered. See, e.g., id. (“Long Distance has truly become ... ‘the. next best thing to being there.’ The Fourth Amendment is sufficiently flexible to account for such technological advances.”); State v. Gutierrez-Perez, 337 P.3d 205, 210-11 (Utah 2014) (concluding language in an e-Warrant application met the Fourth Amendment’s oath or affirmation requirement); Smith v. State, 311 P.3d 132, 140 (Wyo. 2013) (concluding a telephonic oath provides protections for a defendant equal to those provided by an in-person oath). Given the difference between the common law approach and the modern understanding, I conclude the phrase in section 808.3 requiring a warrant application be “supported by the person’s oath or affirmation” is ambiguous. Accordingly, I resort to our rules of statutory construction in resolving the ambiguity,
Generally, “we interpret statutes consistent with the common law unless the statutory language clearly negates the common law.” State v. Carter, 618 N.W.2d 374, 377 (Iowa 2000). As recognized above, oaths and affirmations at common law were administered in person. See Turner, 558 F.2d at 50. However, I find no basis for concluding the common law required physical presence—physical presence for the administration of an oath or affirmation was the only option in a world where remote audio and video communications technologies did not exist. In the late eighteenth century,
the main requirements for a valid affirmation were that the affiant (1) knowingly and intentionally make a statement to a neutral and detached magistrate; (2) affirm, swear, or declare that the information in the statement is true and correct; and (3) do so under circumstances that impress upon the affiant the “solemnity and importance of his or her words and of the promise to be truthful, in moral,, religious, or legal terms.”
Gutierrez-Perez, 337 P.3d at 210 (quoting United States v. Bueno-Vargas, 383 F.3d 1104, 1110 (9th Cir. 2004)). Notably, physical presence was. not among these requirements. Id. at 210-11 (concluding physical presence was not required to satisfy these requirements). Thus, the common law rule does not resolve the ambiguity.
We do not interpret statutes in isolation but “strive to achieve harmony and consistency” between provisions, Carter, 618 N.W.2d at 377. In Carter, we held that an oath or affirmation must occur “in the presence of an authorized official” in order to support a conviction for perjury under Iowa Code section 720.2. Id. This was, in part, because the physical presence of an official was deemed necessary to bind a person's conscience. Id. at 376-77. Because physical presence is required to support perjury convictions under the Iowa Code, I would likewise interpret section 808.3 to require a form of presence sufficient to maintain a criminal consequence for a warrant applicant violating the legal obligation to tell the truth. See Atsinger, 617 N.W.2d at 276 (finding presence of another is required for valid oath in perjury context).
My analysis does not stop there, however. I believe the meaniñg of text remains sufficiently flexible to allow the legal system to embrace new technologies. See Antonin Scalia & Bryan A. Garner, Reading Law: The , Interpretation of Legal Texts 86-87 (2012); see also, e.g., United States v. Jones, 565 U.S. 400, 400-05, 132 S.Ct. 945, 949, 181 L.Ed.2d 911 (2012) (recognizing a GPS tracking, device can effect a “search” within the Fourth Amendment); Kyllo v. United States, 533 U.S. 27, 40, 121 S.Ct. 2038, 2046, 150 L.Ed.2d 94 (2001) (recog *167 nizing “search”- within the Fourth Amendment can be undertaken through thermal imaging); State v. Paschal, 300 N.W.2d 115, 117-19 (Iowa 1981) (interpreting the warrant application process to permit tape-recorded testimony in support of probable cause determination). It might be tantamount to physical- presence for purposes of section 808.3 for a warrant applicant to be present before a magistrate through two-way video communication. In making this assessment, we should consider the purposes underlying the oath-or-affirmation requirement and explore whether technological presence can adequately serve those purposes.
The requirement of an "oath or affirmation exists to impress on an affiant the importance of telling the truth and to ensure the affiant recognizes the legal obligation to tell the truth. See Atsinger, 617 N.W.2d at 276 & n.2. The presence of a court officer serves “to enhance the conscience of the person taking the oath” and “to assure that the person who had knowledge of the facts is the same person who subscribed to the verification.” Id. at 276 n.2. The oath or affirmation and the interconnection between the affiant and the court officer are calculated to increase the reliability of information asserted in a warrant application.
I conclude the use of two-way video technology is tantamount to physical presence for purposes of the administration of an oath or affirmation.[12] Two-way video systems such as SkypeTM and FaceTimeTM enable people located at different places “to see and hear one another simultaneously.” State v. Rogerson, 855 N.W.2d 495, 500 (Iowa 2014). Although virtual presence is not identical to physical presence, see id. at 509 (Hecht, J., concurring specially), it does not significantly diminish the protections provided by an oath or affirmation made in the physical presence of a magistrate for purposes of the warrant requirement. A magistrate administering a video oath or affirmation can see the affiant in assessing credibility and connect the affiant with a warrant application. The audio and video connection between a magistrate and an affiant can, in my view, adequately impress upon the affiant the legal obligation to tell the truth and underscore the solemnity of the oath. See Atsinger, 617 N.W.2d at 276 & n.2. Because two-way video technology provides access to auditory and visual information for both the magistrate and the affiant, I conclude it is tantamount to physical presence for purposes of the administration of oaths and affirmations under section 808.3.
While adequately serving the purposes of physical presence, video technology dramatically enhances the' efficiency of the warrant application process. We should not avert our eyes from the technological changes that are all around us and cling to old ways of doing things fashioned long before the communications revolution began. The users of our justice system reasonably expect it will incorporate, the tecte nologies they are using in their daily, lives. Indeed, I would embrace existing technologies enabling law enforcement officers to seek, -and allowing judicial officers to issue, search warrants before conducting automobile searches when possible and reasonably practicable, - thereby enhancing the protection of privacy afforded by article I, section 8. See Smith, 311 P.3d at 140 (“[T]he availability of such a procedure increases the likelihood that a search war *168 rant will be obtained in DWUI arrest situations, and it greatly decreases the amount of time necessary to obtain the warrant.”).
D. Technology and the Mobility Exigency. I now turn to Storm’s assertion that the mobility of an automobile no longer poses a per se exigency justifying a categorical automobile exception under article I, section 8 because modern communications technologies enable warrant applications to be remotely prepared and submitted without leaving the scene of a traffic stop. See Gaskins, 866 N.W.2d at 17 (Cady, C.J., concurring specially) (“An automatic exception to the warrant requirement, particularly one based on exigency, must account for the new world of technology, and must not continue to exist simply because it existed in the past.”).
As I have already noted, the Supreme Court emphasized in Carroll that a warrant must be obtained if it is “reasonably practicable” to do so and noted that “where the securing of a warrant is reasonably practicable, it must be used.” See Carroll, 267 U.S. at 156, 45 S.Ct. at 286; see also Terry, 392 U.S. at 20, 88 S.Ct. at 1879 (“We do not retreat from our holdings that the police must, whenever practicable, obtain advance judicial approval of searches and seizures through the warrant procedure.... ”). Our own early automobile exception jurisprudence did the same. See, e.g., Shea, 218 N.W.2d at 613 (“[Existence of exigent circumstances may relieve an officer from the obligation to obtain a warrant if it is impracticable to do so.” (quoting Jackson, 210 N.W.2d at 539)); Schlenker, 234 N.W.2d at 145.
Among the foundational principles un-dergirding the automobile exception are the concepts of mobility and “reasonable practicability.” In determining it was not reasonably practicable for the law enforcement officer to obtain a warrant in Rusty, the Supreme Court expressly cited the risk that any evidence within the vehicle would have been lost during “the delay and withdrawal from the scene of one or more officers which would have been necessary to procure a warrant.” 282 U.S. at 701, 51 S.Ct. at 242. Indeed, the Court implicitly determined in Chambers that the mobility of the suspect’s vehicle renders a search warrant impracticable even if there had been time to obtain one prior to the search. See 399 U.S. at 52, 90 S.Ct. at 1982.
As Chief Justice Cady recently presaged, however, the need for an automatic exigency rule “may be affected by the changing technology that is speeding up the warrant process.” Gaskins, 866 N.W.2d at 17. Technological advances now make it reasonably practicable to apply for a warrant from the scene of a traffic stop, at least in some circumstances. Law enforcement officers equipped with laptops and smart phones can and do access the internet from their patrol cars.[13] Using laptops or smartphones, law enforcement officers can establish an audiovisual connection with a magistrate for remote administration of the oath or affirmation. These technologies are widely available and accessible to most officers. Where it is reasonably practicable to use such technologies in applying for search warrants during traffic stops, we should require their use.
I do not contend here that the automobile exception should be categorically abandoned. The exception should be maintained for circumstances in which the State establishes exigency other than the mobili *169 ty of the automobile rendered an application for a search warrant impracticable. For example, if an officer’s lack of internet access precludes the submission of an application for a warrant from the scene of a stop for a reason outside of the State’s control, it would not be reasonably practicable to secure a warrant from the scene of the stop.[14] If securing a warrant is not “reasonably practicable” under the circumstances, then the officer can search a readily mobile vehicle based upon probable cause and exigent circumstances.
The State contends, and the majority affirms, that the categorical automobile exception can be justified and should be maintained because individuals hold lower expectations of privacy in motor vehicles. I disagree. Professor LaFave has observed that “[mjost Americans view the automobile as more than merely a means of transportation.” 3 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 7.2(b), at 735 (5th ed. 2012) (quoting Lewis R. Katz, Automobile Searches and Diminished Expectations in the Warrant Clause, 19 Am. Crim. L. Rev. 557, 570-72 (1982)). In his concurring opinion in State v. Gaskins, Justice Appel aptly described how people use their automobiles.
Automobiles are used as temporary homes or even a place to take a snooze after a long (or not so long) drive. Bank statements, recent mail, credit card invoices, love notes, and medical information may be stored in automobiles. Glove compartments and consoles are pretty good places to keep “papers and effects.” Professionals driving home from work take bundles of documents with them in both hard and electronic formats that are often placed on the back seat.... Today, -with new electronic devices and wireless networks, it is not unusual for an automobile to serve as a virtual office for the conduct of private business.
866 N.W.2d at 36 (Appel, J., concurring specially). I conclude Justice Appel’s characterization of the contemporary uses commonly made of automobiles is apt. I therefore strongly disagree with the notion that the reasonable expectation of privacy in one’s car is so diminished as to support the categorical exception to the warrant requirement reaffirmed today by the majority-
We measure privacy interests by gauging the subject’s “exposure to public view, the types of activities that take place there, the steps taken to protect it from public view, and a host of other variables.” Christopher Slobogin, The World Without a Fourth Amendment, 39 UCLA L. Rev. 1, 22 (1991) [hereinafter Slobogin] (footnotes omitted). Storm had a constitutional *170 ly protected privacy interest in his vehicle, This is evident from the fact that even under the rubric of the automobile exception, we have protected motorists’ article I, section 8 rights by enforcing the requirement to show probable cause and ready mobility. See id. (noting without an expectation of privacy, probable cause would not be required either). Storm took steps to protect , his vehicle’s contents from public view by placing them in the vehicle’s middle console, which indicates he expected privacy. Although I would concede his automobile is less private than his residence, “the minor privacy infringement to .enforce traffic laws does not itself justify the further intrusiveness of criminal investigations.” Sarah A. Seo, Essay, The New Public, 125 Yale L.J. 1616, 1670 (2016).
The majority concludes alternatively that the categorical automobile exception should be maintained because of compelling societal interests in efficiency, public safety, and officer safety. I concede the argument that the automobile exception is easy for law enforcement officers to apply. Because no search warrant is required under the categorical exception, officers do not have to bother with warrants before searching automobiles. From the perspective of law enforcement officers, the exception is quite efficient to' be sure. But the primary purpose of the warrant clause was clearly not to make investigations of crime easy or efficient. See State v. Tibbles, 169 Wash.2d 364, 236 P.3d 885, 889 (2010) (en banc) (“[Wjhatever relative convenience to law enforcement may obtain from forgoing the burden of seeking a warrant once probable cause to search arises ..., we adhere to the view that ‘mere convenience is simply not enough.’ ” (quoting State v. Patterson, 112 Wash.2d 731, 774 P.2d 10, 12 (1989))). A quotation , of Justice Robert Jackson is apt here. He once observed that “[w]hen the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or Government enforcement agent.” Johnson v. United States, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948). Thus, although the categorical automobile exception obviously promotes efficiency for law enforcement officers wishing to search automobiles in furtherance of the investigation of crimes; it comes with far too great of a privacy cost. The exception obliterates the warrant requirement ahd motorists’ right of privacy in their vehicles; Although this cost might formerly have been deemed acceptable because of the impossibility of obtaining a warrant from the scene of a stop, I now conclude it is one this court should no longer require Iowans to pay. Thé ease and efficiency of a criminal investigation are not constitutionally protected interests and must1 yield to the constitutional requirement for a warrant.
The interests in public and officer safety, however, warrant special consideration. All traffic stops executed by law enforcement officers along the roadway are attended by a risk of injury to motorists and law enforcement officers. The State has deemed the level of risk low enough to perform warrantless roadside vehicle searches under the most recent iteration of the automobile exception. It is clear the State has deemed this risk to be acceptable because warrantless searches along the open roadway have been routine since Carroll was decided. Yet the majority would now conclude a warrant application—performed inside a secured police car—is too dangerous to justify extending a stop. Certainly, when the duration of a traffic stop is extended, the risk to motorists and law enforcement officers will, to some unknown extent, be enhanced. I acknowledge this may be true if a warrant must be sought and obtained prior to conducting a valid automobile search. But I *171 am not convinced by the majority’s assertion that the magnitude of- the enhanced risk resulting from electronic applications for search warrants made possible by advancing technology is so great as to justify continued recognition of a categorical exception to the warrant requirement for automobile searches.
I conclude the categorical exception permitting a warrantless search of a vehicle under article I, section 8 can no longer be sustained under the theory that a vehicle’s mobility poses a per se exigency. Accordingly, I would hold that a warrantless search of a vehicle must be justified by exigent circumstances other than mobility. See, e.g., Lam, 391 N.W.2d at 249; Holderness, 301 N.W.2d at 736-37; Shea, 218 N.W.2d at 613.
E. Duration of a Seizure Required to Obtain a Warrant. The majority asserts that we should not abandon the automobile exception as a categorical rule under article I, section 8 because it no more violates article I, section 8 to search a vehicle without a warrant than it does to seize a person without a warrant long enough to obtain a warrant to search. I acknowledge the dissonance between these interests, but conclude that the automobile exception should still be abandoned as a categorical rule.
Article I, section 8 of the Iowa Constitution protects the right of individuals to be free from “unreasonable seizures' and searches.” Iowa Const, art. I, § 8. “A search and seizure without a valid warrant is per se • unreasonable unless it comes within a recognized exception such as consent, search incident to arrest, probable cause and exigent circumstances, or plain view.” State v. Pickett, 573 N.W.2d 245, 247 (Iowa 1997) (quoting State v. Manna, 534 N.W.2d 642, 644 (Iowa 1995)).
The majority accepts the State’s argument that if we strike down the automobile exception and require remote warrant applications when it is reasonable under the circumstances to obtain a warrant, then we will be protecting individuals from a war-rantless search by subjecting them to a lengthier warrantless ■ seizure, In Chambers, the. Supreme Court adverted to this conflict between competing- constitutional interests.
For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment.
399 U.S. at 51-52, 90 S.Ct. at 1981. By permitting an unreasonable search in order to protect a suspect from what would be a reasonable seizure, the majority has given primacy to the mobility interests protected by article I, section 8 and concluded as a matter of law that the property, privacy, and security interests protected by the same provision are less worthy of protection.
T acknowledge that vehicle searches conducted during traffic stops present an inherent conflict between the interests protected by the prohibitions on unreasonable seizures and unreasonable searches. However, I conclude the deprivation resulting from a warrantless seizure of a reasonable duration pending an application for a warrant to search an automobile is a constitutionally tolerable cost for protection of the privacy rights at issue. I agree with the thoughtful comments of a scholar who has written on the-conflicting interests in this context.
Undeniably, the brief seizure of the automobile and its occupants is an intrusion upon the Fourth Amendment rights *172 of its occupants, but the brevity of the immobilization—which often will not require more than an hour—reduces the seriousness of this intrusion. The alternative—an immediate search of the car—irreparably destroys the occupants’ privacy interests in the automobile and the containers inside. There can be no serious debate as to which is the greater and which is the lesser intrusion, Chambers notwithstanding. The rights protected by the Fourth Amendment are more faithfully observed when only the lesser intrusion—the brief seizure—is permitted unless and until a judicial officer authorizes the greater intrusion: a search pursuant to a search warrant issued after a judicial officer concurs that there is probable cause to search.
Carol A. Chase, Privacy Takes a Back Seat: Putting the Automobile Exception Back on Track After Several Wrong Turns, 41 B.C. L. Rev. 71, 89 (1999) [hereinafter Chase] (footnote omitted).
Article I, section 8 protections in the automobile stop and search contexts should apply more forcefully to searches because individuals who prefer seizures to searches can only be protected by a warrant, while individuals who prefer warrant-less searches to seizures can be protected by consenting to the search.[15] See Chambers, 399 U.S. at 63, & n.8, 90 S.Ct. at 1987, & n.8 (Harlan, J., concurring in part and dissenting in part); see also Slobogin, 39 UCLA L. Rev. at 21 n.64. While a warrantless seizure invades a person’s mobility interest temporarily until mobility is restored, a warrantless search invades someone’s privacy permanently. Chase, 41 B.C. L. Rev. at 88-89 (predicting that as technological advances permit warrants to be remotely obtained and reduce the time required to procure a warrant, a brief seizure for the sake of getting a warrant arguably becomes an even lesser intrusion into an individual’s Fourth Amendment rights than an immediate warrantless search).
Upon developing probable cause to search a vehicle, an officer wishing to search the vehicle should inform a suspect that they have a constitutional right to be free from unreasonable searches, explain that probable cause gives the officer the right to detain the suspect for a reasonable period of time necessary to secure a warrant, and advise the suspect that if they would prefer to avoid the delay attending the application for a search warrant, they may waive the right to demand a warrant and consent to the search. Upon receipt of this advisory, the suspect is given an opportunity to make an informed and voluntary choice to require a warrant be obtained or consent to a warrantless search in order to limit the duration of the seizure.
If technology permitting a remote application for a warrant to search an automobile is reasonably accessible to the officer executing the stop, it should be used. In my view, the potential unreasonableness of a seizure’s duration does not, by itself or in combination with a vehicle’s mobility, justify a categorical exception to the warrant requirement for automobile searches under article I, section 8. Considerations affecting the time it takes to apply for a warrant—such as the time of day, the complexity of the facts supporting a finding of probable cause, and the degree of detail constitutionally required—may be addressed within a case-specific exigency analysis. See State v. Andersen, 361 Or. 187, 390 P.3d 992, 999 (2017) (reviewing considerations affecting the time it takes *173 to get a warrant that are relevant to a case-specific exigency determination).
In my view, the mobility of an automobile no longer provides a sound rationale for a per se exigency rule. Under the standard I would adopt, the State must show facts demonstrating an objectively reasonable basis for its claim of exigency supporting a warrantless search. See Tibbles, 236 P.3d at 890 (“Exigent circumstances will be found only where obtaining a warrant is not practical because the delay inherent in securing a warrant would compromise officer safety, facilitate escape, or permit the destruction of evidence.”).[16]
F. Exigent Circumstances. With the foregoing principles in mind, I now turn to the issue of whether an exigency beyond the mobility of Storm’s vehicle justified the warrantless search in this case. Because Storm does not argue that we should apply a different standard for analyzing exigency under article I, section 8 than the Supreme Court applies under the Fourth Amendment, I would apply the federal standard but reserve the right to apply it more stringently than under federal law. See, e.g., State v. Kern, 831 N.W.2d 149, 174 (Iowa 2013).
Here, the State made several arguments in support of its contention that exigent circumstances permitted the warrantless search of Storm’s vehicle under the facts of this case. The State argues that even after Storm was handcuffed and detained, his friends or accomplices could have arrived, commandeered the vehicle, and driven it away. Cf. State v. Winfrey, 302 Conn. 195, 24 A.3d 1218, 1226 & n.8 (2011) (discussing the concern that defendant or someone else could interfere by removing the vehicle from the scene). In adopting the State’s position, the majority notes that Storm used his cell phone at the scene of the stop to call a friend. Two people subsequently arrived at the scene of the stop and, with Deputy Leonard’s approval, took responsibility for Storm’s automobile. There is no evidence that either Storm or. the two persons who came to retrieve the automobile were uncooperative or unresponsive to the deputy’s commands during the stop.
The majority concludes, however, that the prevalence of cell phones makes it easier, as a general matter, for detained suspects to summon others and arrange for evidence to be destroyed during delays occasioned by warrant applications. This determination should be made on a case-specific basis. In this case, the officer perceived a low enough degree of danger to feel comfortable permitting Storm to summon his friends. Although the number of people present at the scene of the stop and the ability of law enforcement officers present there to manage the scene under the circumstances are among the circumstances considered in the exigency analysis I would adopt, see Jackson, 210 N.W.2d at 540, I find no substantial evidence in this record tending to prove that the arrival of Storm’s friends interfered in any way with the deputy’s control of the environment or his ability to prepare a warrant application if he had chosen to do so.
My colleagues in the majority also conclude a warrant requirement for the search of Storm’s automobile raises grave safety concerns for arresting officers. If Deputy Leonard’s attention had been divided between managing the scene of the stop and preparing a warrant application, *174 the majority suggests, it would have been much easier for Storm’s friends or associates to catch the deputy off guard. See Winfrey, 24 A.3d at 1226 & n.8. Although public and officer- safety concerns are a factor in the exigency analysis I propose, see Jackson, 210 N.W.2d at 640, I find no evidence in this record tending to prove such concerns were justified during- the stop that is the subject of this case. The stop occurred in the middle of the afternoon in broad daylight. No inclement weather, visibility problems, or traffic-related issues presenting safety concerns for Deputy Leonard, Storm, or other motorists are evident in this record. Deputy Leonard had no difficulties managing the scene of the stop where all persons present were obedient to- -the officer’s direction.
Although my colleagues in the majority must acknowledge that mere inconvenience surrounding the warrant application process is not enough to establish an exception to the warrant requirement under article I, section 8, they nonetheless assert it would have been impracticable for the deputy in this case to apply for a warrant. An extension of the duration of the roadside stop for the amount of time necessary to apply for a search warrant would, they contend, have created an impracticable burden for Deputy Leonard in this case and. would create a similar burden, for Iowa law enforcement officers who are already stretched too thin in counties with only one or two deputies on duty at a time.' My colleagues further contend Deputy Leonard lacked the training, equipment, and administrative support' necessary to use modern communications technology to expedite the warrant application process. Given these equipment and training circumstances, my colleagues contend, Deputy Leonard could not reasonably have been expected to apply for a warrant.
I am not persuaded. Under the facts of this case, I find the time it would likely have taken to apply for a warrant did not render an electronic warrant application impracticable. Deputy Leonard believed any application -for a warrant must first be approved by the county attorney under a local policy; however, there is no evidence in this case that such approval would not have been readily available. Although the State’s evidence suggested it would have taken Deputy Leonard at least an hour or two to prepare a warrant application in this case, I would credit the more credible testimony of Storm’s expert witness on this subject.[17] Storm’s expert, Bryan Barker, is a former law enforcement patrolman who became a prosecutor and trained officers on obtaining search warrants. Barker persuasively testified that it would have taken the deputy as little as fifteen minutes to prepare an uncomplicated warrant application under the circumstances of this case and a warrant could have been obtained within an hour. Barker’s opinion that an application for a search warrant for routine automobile searches could have been promptly prepared is bolstered by reports from other jurisdictions: (1) in 1981 an Iowa federal court determined a telephonic warrant could be obtained in the federal system in as little as twenty minutes, see United States v. Baker, 520 F.Supp. 1080, 1084 (S.D. Iowa 1981); (2) in 1973 (before the advent of cell phones) the San Diego District Attorney’s Office estimated ninety-five percent of telephonic warrants were obtained in fewer than forty-five minutes, see People v. Blackwell, 147 Cal.App.3d 646, 195 Cal.Rptr. 298, 302 n.2 (1983) (citing Paul D. Beechen, Oral Search Warrants: A New Standard of *175 Warrant Availability, 21 UCLA L. Rev. 691, 700 (1973)); (3) in 2009, an Oregon officer testified that- he could obtain a telephonic search warrant in just one hour, see State v. Machuca, 231 Or.App. 232, 218 P.3d 145, 153 (2009), rev’d on other grounds, 347 Or. 644, 227 P.3d 729 (2010) (en banc); and (4) in 2015, the New Jersey Supreme Court cited a study of forty-two telephonic automobile search warrant applications that on average, took less than one hour, see State v. Witt, 223 N.J. 409, 126 A.3d 850, 865-66 (2015).
I acknowledge that although law enforcement officers may be equipped to submit electronic warrant applications, “improvements in communications technology do not guarantee that a magistrate judge will be available when an officer needs a warrant.” Missouri v. McNeely, 569 U.S. 141, -, 133 S.Ct. 1552, 1562, 185 L.Ed.2d 696 (2013). Nonetheless, the Supreme Court has observed that “technological developments that enable police officers to secure warrants more quickly, and do so without undermining the neutral magistrate judge’s essential role as .a check on police discretion, are relevant to an assessment of exigency” in OWI cases. Id. at -, 133 S.Ct. at 1562-63; see also State v. Pettijohn, 899 N.W.2d 1, 22 (Iowa 2017).
The majority contends Deputy Leonard was not equipped to submit an electronic application for a warrant from the scene of the stop in this case. I am not persuaded. Deputy Leonard possessed a smart phone[18] and his patrol ,car was equipped with a computer. Although I credit the deputy’s testimony that internet access is not available from all locations in the county, he admitted access was available to him from the scene of the stop in this case.
I also reject the majority’s conclusion that Deputy Leonard was not adequately trained to make a warrant application from the scene of the stop in question. Although he had submitted fewer than ten warrant applications during his eight years of service as a law enforcement officer, thé deputy testified that he had received training on the subject at the law enforcement academy. If the deputy had not been trained on the specific topic óf electronic applications for warrants, this deficit was a matter that was entirely within the control of the state. We should not recognize such state-created training deficits as a matter of exigency excusing a warrant under article I, section 8.
Accordingly, I would reverse the ruling on the motion to suppress, vacate Storm’s conviction, and remand- for further proceedings. '
Wiggins and Appel, JJ., join this dissent.

. In 2017, the legislature amended Iowa Code section 808.3 to clarify that the submission of a warrant application can be electronic and the oath or affirmation requirement can be met through electronic means of communication. S.F. 358, 87th G.A., 1st Sess. § 4 (Iowa 2017).

. The evolution of the automobile exception to the Fourth Amendment to the United States Constitution is reviewed at length in State v. Allensworth, 748 N.W.2d 789, 792-95 (Iowa 2008). Contrary to the majority's assertion, Allensworth did not reject an Iowa constitutional challenge to the warrantless search of a vehicle but limited its analysis to the automobile exception to the Fourth Amendment after concluding no state claim had been raised or decided in the district court. See id. at 791 n.2. I discuss the relevant portions of the federal exception’s history below in my discussion of the impact of modern communications technology on justifications underlying the automobile exception to article I, section 8.

. The Court has since indicated the scope of this rule may be limited. See United States v. Johns, 469 U.S. 478, 487, 105 S.Ct. 881, 887, 83 L.Ed.2d 890 (1985) ("We do not suggest that police officers may indefinitely retain possession of a vehicle and its contents before they complete a vehicle search.”); Coolidge v. New Hampshire, 403 U.S. 443, 523, 91 S.Ct. 2022, 2066, 29 L.Ed.2d 564 (1971) (White, J., concurring in part and dissenting in part) (concluding a warrantless stationhouse search is only valid if performed with "some expedition”).

. The parties also address whether the language of another statute should lead us to conclude Iowa Code section 808.3 requires a search warrant application be presented to a magistrate. Iowa Code section 321 J. 10 provides, in relevant part,
Notwithstanding section 808.3, the issuance of a search warrant [for urine or blood tests after a fatal vehicle crash] under this section may be based upon sworn oral testimony communicated by telephone if the magistrate who is asked to issue the warrant is satisfied that the circumstances make it reasonable to dispense with a written affidavit.
Iowa Code § 321J. 10(3). I would conclude this exception does not conclusively demonstrate the general assembly intended in section 808.3 to prohibit remotely administered oaths supporting search warrant applications. The exception in section 321J.10 does not focus on the oath but rather upon the form of application. It permits an oral warrant application as an express exception to the requirement in section 808.3 that warrant applications be made in writing. See id. (permitting "sworn oral testimony” if it is "reasonable to dispense with a written affidavit”). The focus on the form of the application is evident in the comprehensive procedural requirements of section 321 J. 10(3), which preserve the safeguards of a written application by requiring the applicant prepare a duplicate warrant and read it to the magistrate, the magistrate to keep a written record of the call, and the clerk of court to maintain the original and duplicate warrants along with the written record of the call. See id. § 32IJ.10(3)(a)-(h). If section 321J.10(3) focused on securing the protections provided by a physical presence requirement, its procedural protections would instead require things like a verification of identity and a reminder of the consequences of perjured testimony "to enhance the conscience of the person taking the oath.” See City of Cedar Rapids v. Atsinger, 617 N.W.2d 272, 276 n.2 (Iowa 2000).

. The State contends that the interpretation advanced by Storm should be rejected because the term "before” is surplusage if "submit” means "to present or propose to another for review, consideration, or decision.” I disagree. In this context, the term "before” adds the jurisdictional component to the phrase "submitting before,” which indicates that the magistrate must be acting within the judicial officer’s lawful authority.

. My interpretation of the oath and affirmation requirement of Iowa Code section 808.3 is supported by a recent amendment to the statute. Without altering the existing statutory requirements that warrant applications be in writing, submitted before a magistrate, and supported by oath or affirmation, the legislature clarified that the submission can be electronic and the oath or affirmation requirement can be met through electronic means of communication. See S.F. 358, 87th G.A., 1st Sess. § 4 (Iowa 2017).

. Indeed, Deputy Leonard confirmed that he had internet access from the roadside where he stopped Storm. Although he characterized the access as "slow,” the State failed to establish it was so poor as to support a finding that communication with either the prosecutor or a magistrate was impractical.

. The State contends circumstances other than potential shortcomings of technology support a categorical automobile exception to the warrant requirement. For example, an officer’s concentration on the task of preparing an application for a warrant could be disrupted by the need to manage the conduct of multiple people present at the scene of the stop. The State also suggests that some warrant applications are complex and their preparation at the scene of the stop would unreasonably extend the duration of the stop. I view these factors as part of the circumstances upon which any claim of actual exigency should be made. Unlike my colleagues in the majority, I have confidence in our law enforcement officers’ ability to assess the circumstances at the scene of a traffic stop and decide whether an exigency other than mere mobility of the automobile renders an electronic application for a warrant impracticable. Prior to the Supreme Court’s determination in Carney that the inherent mobility of a vehicle is a per se exigency for purposes of the automobile exception, we required a similarly probing exigency inquiry to be made for warrantless vehicle searches under both the Federal and State Constitutions. See Allensworth, 748 N.W.2d at 795.

.' I note that when Storm asked if a warrant was required for the search of his truck, Deputy Leonard told him a warrant was not required.

. We have found, for example, an exigency supporting a warrantless search exists where there- is a ‘‘danger of violence and injury to the officers or others; risk of the subject’s escape; or the probability that, unless taken on the spot, evidence will be concealed or destroyed.” Jackson, 210 N.W.2d at 540.

. In this respect, this case is different than Andersen, 390 P.3d at 999, where the officer’s contention that it would take hours to obtain a search warrant went unrebutted.

. The majority notes that the phone supplied to Deputy Leonard by his employer was an older “flip phone,” not a smart phone. The standard I propose for exigency determinations would not allow the State to justify the categorical automobile exception’s continuing existence by claims that law enforcement officers are not supplied with smart technology that is widely used by other Iowans. This court’s understanding of constitutional doctrine and fidelity to the warrant requirement should not be driven by the unwillingness of appropriators to provide commonly available technology to law enforcement officers. Not-withstánding, Deputy Leonard did possess a smart phone that was available for use in establishing an internet connection at the scene of the stop if he had chosen to do so.